Adams v. Woods.

## ADAMS v. WOODS et al., in re, the petition of Stanly.

A party aggrieved by a judgment has a right of appeal, although he is not a party to the record.

The rule in reference to writs of error, would seem, by parity of reasoning, to apply to the right of appeal; and as to the question, who is the party aggrieved, the test is found in the question—"Would the party have had the thing, if the erroneous judgment had not been given?" If yea, then he is the party aggrieved. But his right to the thing must be immediate, and not the remote consequence of the judgment, had it been differently given.

A receiver is appointed on behalf of all the parties who may establish rights in the cause, and the money in his hands is in *custodia legis*.

In a suit for a dissolution of partnership, the appointment of a receiver is only a *means* to attain the end contemplated by the plaintiff; and so is the employment of counsel by the receiver.

If the complaint contemplated a certain end, it equally intended the use of all the necessary means.

A receiver having the right to stipulate with the counsel employed by him, that the counsel shall rely upon the allowance made by the Court for his services; it is the duty of the receiver to report, among his disbursements, the claim of the counsel, leaving the amount to be fixed by the Court; and if the counsel, or any other person employed by the receiver, feels aggrieved by the order of the Court thereon, he can appeal therefrom.

In such a case, it would only be necessary for the Court below to order the receiver to retain the amount of the disputed items; and the interest of all parties concerned is better subserved by a single appeal upon the entire allowance.

Counsel for the plaintiff, in a suit for a dissolution, cannot claim compensation as associate counsel for the receiver.

The assignor of a claim is incompetent as a witness in favor the claim, when his assignee is a formal party to the record, and equally so, when the suit is prosecuted for the immediate benefit of his assignee, though not a party.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was a suit brought by Alvin Adams against I. C. Woods and D. H. Haskell, for a dissolution of partnership, and has been before this Court in various phases, as will be seen by reference to the fifth, sixth and seventh California Reports. The present appeal is taken in the matter of the petition of Edward Stanly to the Court below for the appointment of a referee, before whom his account might be presented for adjustment and allowance. The claim of the petitioner was for compensation for legal services, as counsel for the receiver appointed in this suit. The Court below ordered a reference. The claim, as prosecuted before the referee, included a claim for associate counsel, the associate counsel being a firm, of which one of the members was the attorney for the plaintiff in this suit. The referee reported in favor of an allowance of sixteen thousand dollars. The Court below entered an order setting aside the report of the referee, without prejudice to another application of the petitioner in proper form. Petitioner appealed.

The sum of the testimony given before the referee, and of the

Adams v. Woods.

other action in the case in the Court below, appears fully in the opinion of the Court.

*Wm. Hayes* for Appellant.

Edward Stanly applied to the Court below, by petition, for an order appointing a referee before whom he might prove his claim against the funds in the hands of the receiver.   The order was granted, and on the coming in of the report, exceptions were taken, and substantially on the grounds following:

1. On the ground that the Court had no jurisdiction to make the order, no notice having been given to the creditors of Adams & Co. that the petition had been presented.

The answer is, that notice was given to the receiver, and that comes instead of notice to the creditors, for the reason:

That they are virtually represented by him.   Story Eq. Pl., §§ 140, 142, 148, 149, 150.

And that to give notice to the creditors would be impossible. Story Eq. Pl., § 150.

2. The question presented by Mr. Stanly's petition was properly a matter of "accounting," and an "accounting" can never be had at the instance of a party, but must be at the instance of the Court.

The answer is that the petition does not put the receiver upon "acounting" in any just sense of that term.

To account is to make a statement of receipts and disbursements with reference to a balance.

The petition asked for no such statement; it might have been and was fully tried and determined upon its merits before the referee, without any inquiry as to the state of the receiver's accounts.

3. The consideration of all claims on the funds in favor of third persons, that have arisen pending the litigation, should be postponed until the final accounting by the referee, and they should then be prefered by petition, and disposed of according to their several merits.

The mode suggested is the mode adopted by Mr. Stanly.   He brought his claim to the notice of the Court by petition.   Where property is in the the hands of a receiver, a third person having claims to it, or against it, is not allowed to sue the receiver; the proper course is for the claimant to apply to the Court, upon notice to the receiver, for an order directing a delivery of the property, or a payment of the claim out of it, as the case may be.   The hearing would be before a master, where the claimant could be examined *pro interesse suo.*   Edwards on Receivers, p. 126, where the cases are collated.

Nor is the mode of procedure restricted to the case above named, but applies in all cases of claims upon trust-funds over

which the chancery has acquired jurisdiction.    Matter of Heller, 3 Paige, 199 ; matter of Hopper, 5 Paige, 489.

It does not, as has been supposed, follow necessarily that any injustice would be done as among the claimants—one by asking first, absorbing the funds to the prejudice of the others—for to allow a claim is one thing, to pay it is another.

If a case should arise where the equities required it, the order might be framed allowing the claim and directing its payment only in due course of administration.    Story Eq. Pl., § 148.

The three objections that have been stated and considered, go to the jurisdiction or to the regularity of the proceedings terminating in the order; but there are others that go either to rulings of the referee, the regularity of the proceedings before him, or to the merits of the claim.

It has been said that the receiver could not employ counsel without the special order of the Court.

The true rule is that he has no powers except such as are conferred upon him by the order for his appointment and the course and practice of this Court.    Ed. on Receivers, p. 4 ; 2 Paige, 452 ; 2 ib., 438.

In the order appointing Naglee, he is expressly authorized to bring suits and employ counsel.

But no express authority to employ counsel is necessary.    Ed. on Receivers, 93.

Again, it is said, it was improper for the receiver to employ counsel of the plaintiff Adams.

The answer is that Shafter & Park were not, in fact, employed by the receiver at all as his counsel.

The arrangement, as testified to by Stanly and Shafter, was substantially as follows :

Stanly was to be the sole counsel of the receiver, and everything was to be subjected to his supervision as such.    But the questions to be investigated were numerous and complicated. Stanly had no acquaintance with the affairs of Adams & Co., and Shafter & Park were acquainted with them intimately. The receiver thought, and whether with reason or without is of no moment, that the interest of the creditors would be subserved by an arrangement securing their services in the litigation then in prospect.    They refused to subject themselves to the receiver's counsel unless they could be compensated for it. As counsel for Adams it was doubtless their duty to look after his interests, but after the appointment of a receiver, who became such for all parties, it became his duty to initiate all proceedings for the defence, or augmentation of the fund, and to control them thereafter.    In that behalf, Adams was not bound to put himself to private charges, neither were Haskell or Woods, and the counsel of the former were no more bound to connect them-

selves with suits instituted by the receiver than were the counsel of the latter.

Again, the interests of Adams were not opposed to the interests represented by the receiver, and, therefore, the receiver might well arrange for the services of Shafter & Park without subjecting himself to the imputation of breach of trust.

The arrangement was that Shafter & Park should assist Mr. Stanly, he, however, being the sole and responsible counsel and adviser; and that the aggregate amount of service rendered by him in person, or by him through Shafter & Park, should be the basis of the compensation to be awarded to him by the Court. With the amount of the allowance to be made by Stanly to his subalterns, the receiver had nothing to do.

The relation of Shafter & Park to Mr. Stanly, when exactly considered, was not that of associate counsel.

The arrangement, then, was not only free from the technical objection now brought against it, but when considered in connection with the main purpose of the suit, may have been highly promotive of it in fact.

It is also said that Stanly was an interested witness, and, therefore, his testimony should be disregarded.

The report discloses that he was called by the counsel of Adams.

It is according to the chancery practice to allow a party standing in Mr. Stanly's position, to be examined *pro interesse suo*. Edwards on Receivers, p. 129.

If Stanly's testimony should be disregarded, there remains the testimony of Shafter, corroborated by Shearer and Simonds.

But it is said that Shafter was an incompetent witness, for he was the assignor of an unliquidated demand.

The answer is, that the rule that the assignor of an unliquidated demand is an incompetent witness, applies only in actions brought by the assignor. Practice Act, § 4.

*Eugene Casserly* for Respondent.

1. The appellant is Edward Stanly, who is neither a party to the record nor the successor in interest of a party; but a mere stranger to the record, cannot prosecute an appeal.

The rule, as stated, is perfectly well settled, both in this State and elsewhere.

Montgomery v. Leavenworth, 2 Cal. R., 57, is not only an authority as to the general principle, but very analogous as to the facts; except that was a much stronger case in favor of the appeal than this.

To the same effect are all the authorities, ancient and modern. 3 Bac. Abridg; "Error," "B," and the old authorities; 2 Saund., 46c, note 6; 2 Tidd's Prac., 1189; Barr v. Stevens, 1 Bibb, 292; South's Heirs v. Hoy, 3 Bibb, 522.

21

This was so at common law as to writs of error : to which the last above cited authorities mainly relate.

A *fortiori* as to appeals, the right to which being a statutory one, must be strictly pursued. Murdock, Appellant, etc., 7 Pick., 304; per Parker, J., 319, 320.

Nor does the language of our statute, allowing an appeal to the "party aggrieved," Practice Act, § 335, comprehend such a case as the present. The appeal is by the same section expressly limited to " the cases prescribed by this title," which, as will be seen hereafter, do not include this case. And besides, " any party aggrieved," must necessarily mean " any party " to the record.

This is the construction placed in other States upon the same language. Swan *v.* Picquet, 3 Pick., 443, 444; Downing *v.* Porter, 9 Mass , 386.

The general rule of law being as has been stated,—there is certainly nothing·in·the present case to release it from the general rule.

In this case the parties to the record are the plaintiff,' Alvin Adams; the defendants, Woods & Haskell; and the creditors of the partnership; which creditors are in part represented by the receiver.

The appellant Stanly is not a party to the record. He is not one of the creditors of the partnership and has no claim against it whatever. Neither is he a party by virtue of any lien upon the fund. None but the creditors of the partnership have such a lien, and until a decree for distribution, theirs is only a *quasi* lien, or equity to be worked out through the express equitable lien of the partners. Ex parte Ruffin, 6 Vesey, 119; ex parte Williams, 11 Vesey, 3, approving and affirming ex parte Ruffin, and see per Eldon, Lord Ch., pp. 5 and 6; Story on Part., §§ 326, 361.

Stanly is no creditor of the partnership, and has no claim against it, nor upon the fund. His claim, if he has any, is against the receiver. But this is upon a contract and debt personal between themselves. Though the receiver is allowed to pay this debt out of the fund, like all others which he contracts in the discharge of his duties, yet he can do this only to the extent the debt is approved in passing his accounts finally before the Court. Anything beyond that he must pay out of his own pocket. Thus, a receiver may contract to pay his solicitor what he pleases for his services. But whatever his contract, the amount allowed by the Court, as just, in the passing of his accounts, and no more, can be paid out of the fund. The residue is a debt due by the receiver himself. What is allowed and thus made payable out of the fund, (to the receiver—not to his counsel,) is so because it is a fair and just expenditure incurred by the receiver for the benefit of the fund. Not at all because there is any lien

Adams v. Woods.

or *quasi* lien on the part of the counsel—or anything bearing the remotest approach to one.

2. The order appealed from is not one from which an appeal will lie in any case.

The law-making power of this State has defined, as it has the right to do, the cases in which an appeal may be taken. These are set forth in section three hundred and thirty-six of the Civil Practice Act. As if to remove all doubt that appeals were to be confined to those cases and those only, section three hundred and thirty-three, with which "Title IX," concerning "appeals in civil actions" commences, provides, "a judgment or order in a civil action, except when expressly made final by this act, may be reviewed as prescribed by this title, and not otherwise."

The whole proceeding, on the part of the appellant, is so anomalous and unheard of, that it is difficult to describe or classify the order by which the District Court of the Fourth Judicial District has very justly turned it out of Court. It is most like an interlocutory order, and this Court has already decided that from such an order, no appeal will lie. Johnson *v.* Sepulveda, Jan. Term, 1856.

This always was the rule in Chancery, and there rigorously enforced. Buel *v.* Street, 9 Johns., 443, and see, per Kent, Ch. J., stating the test of an appealable order to be, that it must involve a decision upon the merits of the controversy, p. 448.

Whatever doubt there may be as to what kind of an order this is, there is none as to what it is not. It is certainly not such an order as an appeal will lie from under our laws.

3. Appellant's motion for a reference, the order of the Fourth District Court allowing it, and all the proceedings thereunder, were grossly irregular and a nullity.

It may very safely be assumed that the object of the suit of Alvin Adams *v.* Woods & Haskell, is to wind up the partnership and distribute the assets *pro rata* among the creditors. It may also be assumed, with equal safety that in such a suit the only matters of which the Court has jurisdiction, are those which are in some way relevant to the issues involved. Such are the existence of the partnership, the necessity for its dissolution, the appointment of a receiver, the amount of the assets and of the debts, the mode of distribution among the creditors, and the amounts to be distributed to each, etc. With respect to such matters, having jurisdiction, it has all the incidents of jurisdiction, and among these the right to inform itself by references, to make orders and decrees, etc.

But beyond this its powers do not go. It cannot engage in the investigation of questions and the settlement of controversies, which, however interesting to the parties concerned in them,

have no proper connection with the subject-matter of the suit. Thus, in the present case, the controversy between the appellant and the receiver, as to the measure of the former's compensation, is one which has really nothing to do with the merits of the suit of Adams v. Woods & Haskell. For the Court to engage in it is simply to go beyond its jurisdiction, and do injustice to the rightful parties to the litigation.

The receiver is an officer of the Court, intrusted with the collection, preservation, and management of the assets and the other interests of the estate committed to his care. Though he has a right to the advice and instruction of the Court in important matters which are to bind the estate, such as a lease for more than a year, Morris v. Elme, 1 Vesey, Jr., 139; Doe. ex dem. Marsack v. Read, 12 East., 58, yet as to the details of his management of the estate, and the expenditures necessary for that purpose, in employing agents, attorneys, solicitors, clerks, etc., he has a discretion which in the nature of things he must exercise at his own risk, and that of his sureties on his official bond. Money he ought not to pay out, unless in small sums, without the order of the Court, for if he does it is at his peril. Fletcher v. Dodd, 1 Vesey, Jr., 85; Bennet's Master's Office, p. 98. Whatever he pays or incurs he exhibits in his accounts. See form of these accounts, Bennet's Master's Office, Appendix, 48, side paging, Law Lib., vol. 35. These he passes at stated periods from time to time, and finally, before his discharge; but always upon notice to the creditors and the other parties to the suit, who thus have their day in Court to investigate and canvass his accounts, item by item. Edwards on Receivers, 512; Hoffman's Master's Office, 163; Bennet's Master's Office, 99, 100, side paging, Law. Lib., 35. And if this duty is insufficiently discharged by them, the Court of its own motion will assume it.

Then, and not otherwise, the allowances claimed by the receiver for his counsel-fees, salaries of his clerks, agents, etc., come before the Court; and if numerous, heavy, or disputed, are referred to a master to examine and report. Matter of Kellogg, 7 Paige, 286. To this inquiry all are parties—plaintiff, defendant, receiver, and the creditors of the estate. Bennet's Master's Office, p. 100, side paging; Edwards Rec., 515, 552. The receiver's solicitor is not, however, nor is his clerk, nor his agents. Upon the coming in of the master's report, the allowances claimed, are rejected, or modified, or allowed in full, as may be just. Bank of Niagara, 6 Paige, 213, 215, 216. If the receiver has proper legal advice he will neither pay nor promise larger fees to his counsel than will be just; and if he is particularly prudent, he will, as the receiver did in this case, (see testimony of H. M. Naglee, referee's report, date of July 3d, stipulate that the bulk of the compensation shall be such as the Chancellor will allow.

If, on the contrary, he should pay, or promise, immoderate counsel-fees, neither his payments, or his promises, will be regarded by the Court in settling his accounts. _ The item will be fixed at what is just. If more has been paid, the receiver loses it, and must account for it to the estate. *In re* Montgomery, 1 Molloy, 419, 12 Eng. Chanc.; the receiver, in passing his accounts, is not allowed costs of a suit erroneously brought. Same principle, Swaby *v.* Dickon, 5 Sim., 629, 9 Eng. Chanc. R. If more has been promised, his counsel must look to him for it, and they must settle it between them by a suit at law, or compromise, as each may be advised.

If the plaintiff, defendant, the creditors of the receiver, should be dissatisfied with the allowances made by the Court upon the final settlement, they, or any of them, may undoubtedly appeal from the order, as being a special order after judgment. Edw. Rec., 543–4. But counsel of the receiver cannot appeal; and it was never before heard of, or suggested, that he could; his remedy, in any case, being against the receiver alone, with whom was his contract? See Strike's case, 1, 57, and per Bland. Chanc., at p. 98; directly in point.

4. Upon the facts of the case, as disclosed on the reference, the claim of the appellant is without merit; and upon this ground, also, the order of the Court below was right.

The chief witnesses are the appellant Mr. Stanly, and Mr. O. L. Shafter. Without their testimony, the proof is incomplete as to the most material part of the case, the rendering of the services. They are both interested in the claim—Mr. Stanly directly in the whole, and Mr. Shafter, with his partner Mr. Park, in one-half of it, with their agreement with Mr. Stanly.

Mr. Stanly could not offer himself as a witness. Mr. Park, however, acting as counsel for Alvin Adams, calls him to establish the claim which, when collected, is to be divided between them. A more striking instance could not be presented of the great propriety of the rule that the solicitor of either party is incompetent to act for the receiver, directly or indirectly, as associate counsel.

Then, the testimony being still incomplete, Mr. O. L. Shafter is brought in to supply the *hiatus*, by the counsel for Mr. Stanly. Thus, the case of the appellant is made out by the testimony of the two men, of all the world, most disqualified by law to testify—the appellant himself, who is to receive the amount reported by the referee, and his associate counsel, who is to share it with him.

True, it is said Mr. Stanly is called as a witness by an adverse party, the plaintiff Adams. But, in fact, the only really adverse parties were the receiver and the defendants.

It is also said that Mr. Shafter had assigned his interest and, therefore, was competent. This is not so. The assignor is, by

our statute, imcompetent as a witness for the assignee; and it is in proof that the assignee, Mr. Hayes, is the partner of the appellant, (see testimony of O. L. Shafter, referee's report, October 8,) and, of course, interested in his claim. The motion to strike out his testimony was improperly denied by the referee.

The testimony of Messrs. Stanly and Shafter being stricken out, the claim of the appellant has nothing to stand on.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

In the matter of the petition of Edward Stanly.

In the progress of this suit the Court below, on the twelfth October, 1855, appointed Henry M. Naglee as receiver, with authority to bring suits, and employ counsel. On the twenty-ninth October, 1855, the petitioner was employed as counsel by the receiver, and continued to act as such until the tenth May, 1856. The petitioner then filed his petition, praying the appointment of a referee, before whom his account might be presented, for adjustment and allowance. The Court appointed the referee, who proceeded to take testimony and make his report. The report was set aside, on motion, and the petitioner appealed to this Court.

The learned counsel for the defendants, Woods and Haskell, insists that the appeal should be dismissed, upon the grounds : First, that the appellant is no party to the record, nor the successor in interest of a party; Second, that no appeal will lie from such an order.

The Constitution of this State confers upon this Court appellate power, in all cases where the amount in controversy exceeds two hundred dollars; and, this appellate power having been conferred by the Constitution, cannot be taken away, or impaired, by act of the Legislature. It is within the legitimate powers of the Legislature to prescribe the *mode* of taking appeals, so that the appellate powers of this Court be not thereby impaired. And this Court is expressly empowered, by the Constitution, to issue all writs and processes necessary to the exercise of its appellate jurisdiction.

And, as the appellate power of this Court extends to cases like the present, the only question that can arise, regards the time and the mode of invoking it. The petitioner, therefore, must have the right to the decision of this Court in some form.

By the three hundred and thirty-fifth section of the Practice Act, " any party aggrieved may appeal in cases proscribed in that title."

The only inquiry arising under this provision is, who is a " party aggrieved," in the contemplation of the statute.

In a note to the case of *Williams v. Gwyn*, 2 Saund., a 46, it is stated :

"No person can bring a writ of error, unless he is a party, or privy to the record, or is prejudiced by the judgment; the rule upon the subject being, that a writ of error can only be brought by him who would have had the thing, if the erroneous judgment had not been given."

And in the case of South's Heirs v. Hay, 3 Bibb, 523, the Chief Justice said:

"It is a general rule, that no one who is not a party, or privy to a judgment, or prejudiced thereby, can maintain a writ of error to reverse it."

So, in the case of Swan v. Piquet, 3 Pick., 443, it was held that a debtor of an estate could not appeal from a decree of the Judge of Probate, granting letters of administration. The Court were of the opinion: "that under the statute, a party aggrieved must be one who is interested in the administration of the estate, and not a debtor merely." See also 9 Mass. R., 385.

The rule in reference to writs of error, would seem, by parity of reasoning, to apply to the right of appeal. And as to the question who is the party *aggrieved*, the test found in the note already quoted from Saunders, seems to be the most clear and simple that could be conceived. *Would the party have had the thing, if the erroneous judgment had not been given?* If the answer be yea, then the person is the "party aggrieved." But his right to the thing must be the immediate, and not the remote consequence of the judgment, had it been differently given.

If, then, the decision of the Court below had been in favor of Stanly, he would have been entitled to the thing in controversy, and therefore is aggrieved by the decision if erroneous.

The second ground for dismissing the appeal is, that no appeal will lie from such an order.

It would seem that the order appealed from is not one of those mentioned in the third division of section three hundred and thirty-six, from which an appeal will lie before final judgment. The order in this case, from which the appeal is taken, was a special order made after final judgment. The final decree of dissolution was rendered, in December, 1856, and the order was made in January, 1857.

The next point insisted upon by the counsel of Woods and Haskell, is that "appellant's motion for a reference, the order of the Fourth District Court allowing it, and all the proceedings thereunder, were grossly irregular and a nullity."

This is simply a question of practice, and yet it is one of great importance.

A receiver is an indifferent person as between the parties, and is an officer appointed by the Court, and is, therefore, not to be disturbed by any person, without the special leave of the Court. He is appointed on behalf of all the parties who may establish rights in the cause, and the money in his hands is in *custodia legis*

for whosoever can make out a title to it. Edwards on Receivers, pp. 2, 3.

In this case the complaint was for a dissolution of a partnership, the appointment of a receiver, and the distribution of the partnership assets among the creditors. The appointment of a receiver was only a *means* to attain the end contemplated by the plaintiff in the suit; and the employment of counsel by the receiver was also a *means* to attain the same end. Both these means were equally within the relief prayed for by the plaintiff, for the reason that the relief could not possibly be obtained without the use of such means. And if the complaint intended to reach a certain end, it equally intended the use of all the means necessary to obtain it.

As the employment of counsel was contemplated by the suit, and as it is conceded that the receiver had the right to stipulate with the counsel, that he must rely upon the allowance the Court might make out of the particular fund, and not upon the personal responsibility of the receiver, it became a question as to what was the proper course for the counsel to take under the circumstances. And the Court below seems to have taken a very just and satisfactory view of the practice proper in such cases.

It is the duty of the receiver to file his accounts when required by the Court, and if he fail in this, the Court, upon application of a party in interest, or upon its own motion, will compel him to do so. When his account is filed, all claims against the fund for disbursements, or engagements made by the receiver, would properly come before the Court for consideration. When the receiver has paid no money, but has made an arrangement with a party to receive such compensation as the Court may allow, he should report the facts, leaving a blank for the sum that may be allowed. If any of the parties employed by the receiver, should not be satisfied with the account, in whole or in part, they could then make their obligations, and if any one or more of them should feel aggrieved by the final order of the Court, they should all appeal, and all the questions should come up before this Court in one case. However extensive the record, and numerous the parties and questions might be, the labor of this Court, and the expense to the parties, would not in this way be increased, but diminished. But if a separate reference and a separate appeal were allowed in regard to each separate claim upon the fund, then the proceedings would be greatly prolonged, to the injury of all parties. And when the appeal should be taken, it would only be necessary for the Court below to order the receiver to retain so much of the fund in his hands as might be necessary to pay the disputed items, if finally allowed, and order a distribution of the remainder.

We will now proceed to examine the claim of the petitioner

upon its merits.  And in the first place, we must say that the
index to the transcript is almost entirely worthless.  The testi-
mony fills some one hundred and fifty pages, and the only refer-
ence to it in the index is to the pages where it begins.  And in
the briefs of counsel no reference is made to the pages of the
transcript, but only to the name of the witness, and the day on
which his testimony was taken.  In the points made by the re-
spondent, it is true, a partial reference to the pages of the
transcript is made.  For these reasons, we have been compelled
to waste much time in searching for matters that could have
been readily found, either with a proper index, or a correct
reference in the brief to the pages of the record.  It appears
that during the investigation had before the referee, Mr. Stanly
was examined as a witness, at the instance of Mr. Park, one of
the attorneys of Alvin Adams; and Mr. O. L. Shafter, also one
of the attorneys of Alvin Adams, was examined at the instance
of the attorney for petitioner.  The testimony of the receiver
Naglee, was also taken.

In reference to the agreement between the receiver and Stanly,
the latter states substantially, that he was retained as counsel
for the receiver in all the business in which said Naglee was
acting as receiver—that, as there was more than one man could
attend to, it was agreed that Messrs. Shafter & Park were to be
associated with Stanly, and the compensation for their services
was to be allowed by the Court—that Shafter & Park were to
receive their compensation through Stanly, and that Stanly was
not to be responsible to Shafter & Park for any compensation,
unless received by him; that the division between them of what-
ever compensation might be allowed, was left entirely to Stanly
—that Stanly made an arrangement with Shafter & Park, to his
satisfaction—and that the service was rendered by Shafter &
Park according to their agreement with Stanly.

Mr. Shafter states, that " the arrangement as finally made be-
tween Shafter & Park, and Mr. Naglee, to which Mr. Stanly was
a party, was this—Mr. Stanly was to be the attorney of re-
cord for the receiver, and Shafter & Park were to be associated
with him, (Mr. Stanly,) in fact, but not on the record, and that
we were to aid Mr. Stanly in the transaction of all professional
business, as the receiver might require, and the service perform-
ed by the three, in aid of the fund, was to be the basis of charge,
wholly irrespective, whether it was rendered by Shafter &
Park, or Mr. Stanly, (that all the service was to be rendered
through Mr. Stanly,) and charged for in his name; that is, the
claim for the services of Shafter & Park, and Mr. Stanly, was to
be presented in Mr. Stanley's name, and the amount allowed by
the Court was to be divided between Shafter & Park and Stanly,
as they could agree upon."

The receiver stated, that "the agreement between us was,

that he (Stanly,) should receive five hundred dollars as a retainer, out of the first funds which should come into the hands of the receiver, and such other compensation should be allowed, after the services should be performed, as Judge Hager should conceive to be reasonable, and that I was not to be held responsible for any of the fees. There was an understanding between myself and Mr. Stanly, that there should be no official connection between myself and Messrs. Shafter & Park, in the matters pertaining to the business of Adams & Co., and that any assistance rendered by them to him, was a matter of understanding between themselves."

The several statements of Mr. Stanly, Mr. Shafter, and the receiver, as to the arrangements between the parties, do not differ in substance, except as to the retainer-fee of five hundred dollars. The arrangement is clearly expressed in the language of Mr. Shafter: "Mr. Stanly was to be the attorney of record for the receiver, and Shafter & Park were to be associated with him in fact, but not on the record."

In the account of Mr. Stanly, filed with the referee, he states that "the valuable services of associate counsel are included in this account."

As the services of Shafter & Park constituted in part, the basis upon which the claim of the petitioner was allowed by the referee, it has been objected by the defendants and others, that the arrangement made between the receiver and the petioner was illegal, and that the referee should have disregarded it. If this position be well taken, it would certainly affect the claim of the petioner very materially.

Mr. Edwards, in his work on Receivers in Chancery, states the rule thus:

" When the receiver is thus fully appointed, he should retain his own solicitor and counsel, who ought not to be the same as are employed by any of the parties in the suit; because the solicitors of the several parties are bound, in duty to their clients, to watch the proceedings of the receiver, and to see that he faithfully discharges his trust; and the undertaking to act as the solicitor or counsel for the receiver, under such circumstances, would therefore frequently cast upon the person thus assuming to act inconsistent and conflicting duties, both of which duties could not be properly discharged by the same person." Page 93.

It is insisted by the counsel of the petitioner that " Shafter & Park were not in fact employed at all as his counsel." But this would seem not to be true, Mr. Shafter in his testimony states that Stanly was the attorney of record, and Shafter & Park were *associated* with him in fact, but not on the record. The learned counsel insists, in another part of his brief, that " the

relation of Shafter & Park to Mr. Stanly, when exactly considered, was not that of associate counsel."

But both Mr. Stanly and Mr. Shafter state differently, and it is apprehended that it would require a very *exact* discrimination to see the distinction.    Certainly, Messrs. Shafter & Park acted *as counsel.*   If they did not act as associate counsel with Mr. Stanly, in what capacity did they act?   It is true, they are called, in one part of the brief, "subalterns" of Stanly; but this may be true, and yet, they may have been associate counsel.    It is very usual, when several counsel are employed, to give one the leading control of the case, and the others must, of course, be subordinate.   If Shafter & Park acted as the counsel of Adams, then they cannot have any claim upon the receiver, or upon the fund in his hands.   On the contrary, if they acted as counsel for the receiver, they must have acted as *associate* counsel with Mr. Stanly, for they all *three* acted as counsel in the *same* matters, and for the *same* party, and claim pay out of the *same* fund.    The only difference that can be perceived between the relation of Stanly and Shafter & Park, and that usually existing between associate counsel, consists in the fact that Stanly was the counsel of record, and Shafter & Park counsel in fact, and not of record.   But it cannot be perceived how this circumstance can change the relation they sustained to each other, and to the receiver, in the contemplation of a Court of Equity.   On the contrary, this attempt to evade a salutary rule, in the manner stated, deserves the less indulgence.   If Shafter & Park had put their names upon the record, as the associate counsel of Stanly, their claim for compensation would have deserved more consideration.

The learned counsel for the petitioner says, in another portion of his brief, that Shafter & Park "refused to subject themselves to the receiver's counsel, unless they could be compensated for it."

But what right had they, being the counsel of Alvin Adams, to subject themselves to the receiver's counsel, whether with or without compensation?   Adams and the receiver clearly occupied very different positions with respect to the fund, and the claims upon it.   When, therefore, Shafter & Park subjected themselves to the receiver's counsel, they placed themselves in a false position.   It was the duty of Naglee to do entire justice to all parties.   He had no interest in defeating just claims, or in allowing those that were unjust.   His position was that of perfect impartiality.   But it was not so with Adams.   It was his pecuniary interest to defeat all the claims.   Besides that, it was his interest to make the receiver liable, if he could.   Suppose that Adams should wish to call in question the acts of the receiver, in those very cases where Shafter & Park advised and

acted as his counsel. It would certainly place the counsel in a most embarrassing position.

The salutary character of the rule which will not permit a receiver to employ as *his* counsel those engaged for any other party to the proceedings, and the necessity for sustaining and enforcing it, are forcibly illustrated, and confirmed by the facts and circumstances of this case. The counsel seem to have been fully aware of the rule, otherwise we cannot account for the circumstance that Shafter and Park were not associate counsel on the record, but were such in point of fact.

In the proceedings before the referee, Mr. Stanly was introduced and examined as a witness by Mr. Park, who acted ostensibly as the attorney of Adams. The fact that the petitioner was introduced by the counsel of Adams, is one of the grounds stated in the brief of counsel to sustain the decision of the referee in permitting Mr. Stanly's testimony to be heard against the objections made by the counsel of other parties. The only object for which the testimony of Mr. Stanly was introduced, must have been to *sustain* his claim. Alvin Adams had no interest in sustaining the claim, but Mr. Park had; for his compensation, under the existing arrangement, depended *solely* upon the success of the petitioner. If Mr. Stanly failed, in whole or in part, Mr. Park was directly affected. Mr. Park, then, in his ostensible capacity as counsel of Adams, introduces the petitioner upon the ground that he was an adverse party in interest to his client, Adams; while the *real* object of the testimony was to sustain the claim; and therefore, to obtain a direct advantage to the attorney himself. And it is most justly remarked by the Judge of the District Court, that "Stanly and Park, instead of being in the position of adversaries, were coadjutors, and by the admissions of the one called out by the other, both were interested in sustaining the claim, and neither could testify in favor of the other as against the fund, or the parties claiming an interest therein."

After the introduction and examination of Mr. Stanly by Mr. Park, Mr. Shafter was introduced as a witness by the counsel of petitioner. Mr. Shafter stated that he had assigned his interest in the claim to Mr. Hays, the attorney of Mr. Stanly. A motion was made before the referee to strike out the testimony of Mr. Shafter, which was overruled.

It is objected to the testimony of Mr. Shafter, that he was, incompetent as a witness, for the reason that he was the assignor of an unliquidated demand, and therefore, incompetent under section four of the Practice Act. This objection is answered by saying that the rule applies only in actions brought by the *assignee.*

It is true that the language of that section, taken literally, applies only to suits strictly brought by the assignee. But we

Adams *v.* Woods.

must take the different provisions of the act together; and from a comparison of them all, seek the true meaning of the Legislature. By the four hundred and twenty-second section of the act " a person for whose immediate benefit the action is prosecuted or defended, though not a party to the action, may be examined as a witness, in the same manner, and subject to the same rules of examination as if he were named as a party."

The substantial effect of this provision is, to place persons for whose immediate benefit the action is prosecuted or defended, though not parties to the record, upon the same footing as formal parties, so far as regards their position *as witnesses.* It is then clear, that if Mr. Shafter had not assigned his interest, he would not have been a competent witness for Mr. Stanly; and the intention of the fourth section, is to continue the incompetency of the witness after he has assigned his interest. The object of that section was to prevent the practice of assigning claims, with a view to making a witness of the assignor. This being the object of the statute, it does not matter whether the assignee is a formal party to the record, or whether the suit is prosecuted for his immediate benefit. The reason and principle of this rule will equally apply here. In this case the assignee was substantially a party, and that was sufficient. A substantial and a formal party stand upon the same footing as witnesses. So, a substantial and a formal assignee stand upon the same ground; neither can introduce the assignor as a witness. If this were permitted, the true intention of the statute could be indirectly defeated. A certain *end* was contemplated by the statute, and must be attained. The law cannot be defeated by simply varying the mode of attack. When the facts are known to the Court, such attempts must fail. Here, Shafter & Park are first the counsel of Alvin Adams, the plaintiff in this suit; Mr. Stanly then becomes the counsel of record for the receiver, and Shafter & Park became his associate counsel in fact, and by an arrangement among themselves, they are to share in the compensation to be recovered through Stanly. Mr. Park, as counsel for Adams, introduces Mr. Stanly as a witness, and Mr. Shafter assigns his interest, and is introduced by his assignee, acting as attorney for Stanly. Surely, such a course cannot be sustained in a Court of Equity, however innocent the intention of the parties may in fact have been.

The testimony of both Stanly and Shafter was inadmissible.

In Edwards on Receivers, it is said that it "will not be well for a receiver, even though he may be a professional man, to act as counsel in the business of his trust, as he will not be entitled to any extra counsel-fees for his work."

The learned author refers to the case of the Bank of Niagara, (6 Paige, 213,) which sustains the position stated. In that case the Chancellor held, that "no allowance for extra counsel-fees

to himself, can therefore be made to a receiver, or other trustee, upon the settlement of his accounts."

The principle settled in these authorities is entirely applicable to the facts of this case. Shafter & Park being the counsel of Adams, had no right to subject themselves to the counsel of the receiver; and any services they may have performed, must be held to have been performed for their own client, and they must look to him alone for compensation. It would be as safe to permit a receiver to act as his own counsel, and to allow him compensation therefor, as to permit the attorney of the plaintiff to act for the receiver, and then claim pay out of the fund in his hands. The practice, if tolerated, would lead inevitably to the most melancholy abuses. Attorneys are officers of the Court, and it is its highest duty to see that its own officers conduct themselves properly; and that this end may be obtained, the Court should inflexibly discountenance every practice that may tend to bring reproach upon the administration of justice.

The petitioner is only entitled to compensation for the services he individually performed, and no more. And as to what those services were worth, we must leave the Court below to determine. That Court is acquainted with all the facts and circumstances; and it would require, in our opinion, a clear abuse of that discretion, to justify any interference on the part of this Court.

Judgment affirmed.