Filed 6/21/16  Continental East Fund v. Crockett CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL EAST FUND IV, LLC, | D069652 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIC527384) |
| DONALD RAY CROCKETT, | |
| Defendant and Respondent, | |
| BANK OF AMERICA, N.A. et al., | |
| Interveners and Appellants. | |

APPEAL from an order of the Superior Court of Riverside County, Sunshine S. Sykes, Judge.  Reversed and vacated with directions.

McGuire Woods, Leslie M. Werlin, and Blake S. Olson for Interveners and Appellants.

Floratos, Loll & Devine, William A. Floratos, and John M. Devine for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

Plaintiff Continental East Fund IV, LLC (Continental) obtained a judgment against defendant Donald Ray Crockett and a codefendant in the amount of $4,157,480.90. In proceedings to enforce the judgment, the trial court issued a "turnover order" requiring Merrill Lynch, Pierce, Fenner, and Smith, Inc. (Merrill Lynch) to transfer to Continental's counsel all of the funds (approximately $3,900,000) held in a Merrill Lynch account that the court found Crockett owned. Bank of America, N.A. (Bank of America) claims it holds a perfected first priority security interest in approximately $3,087,000 of the funds in the account under a loan agreement.

Bank of America and Merrill Lynch (collectively appellants) appeal the turnover order, contending (1) the turnover order is appealable; (2) they both have standing to appeal the turnover order; (3) Bank of America was not provided adequate due process before it was deprived of its security interest in the subject account; (4) the trial court exceeded its jurisdiction under California's Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.[1]) (EJL) by issuing the turnover order without determining Crockett's interest in or ownership of the funds in the account; (5) the court exceeded its jurisdiction by issuing the turnover order without complying with Corporations Code section 15907.03, which governs transfer of a judgment debtor's interest in partnership property to a judgment creditor. We agree that Bank of America was not provided adequate due process and, accordingly, reverse and vacate the turnover order.

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise specified.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2012 Continental obtained a superior court judgment against Crockett and David Wakefield awarding Continental $4,157,480.90. In April 2015, Continental obtained an order requiring Merrill Lynch to appear for a third person examination under section 708.120 regarding property of the judgment debtor in Merrill Lynch's possession or control. On May 7, 2015, the court granted Continental's ex parte application for a temporary restraining order (TRO) preventing Crockett and Merrill Lynch from transferring or encumbering assets held in Merrill Lynch accounts ending in 2446 and 7359[2] under the name of Crockett 39 Family Partners, Ltd.

On May 8, 2015, after Merrill Lynch underwent the third person examination, the court issued an order stating: "It is requested that MERRILL LYNCH . . . immediately deliver to the Judgment Creditor cash assets held in #[] . . . 7359 . . . , which will be applied toward satisfaction of the Judgment . . . entered on June 14, 2012 along with all interest accrued therein." The court set a hearing on "the matter of turnover" for May 14, 2015 and set a deadline for any party opposed to the turnover to file opposition and for Continental to file "responsive pleadings." The order further provided the restraining order issued on May 7 would remain in effect until the conclusion of the hearing.

Crockett filed opposition to the turnover order and the court ultimately held the hearing on the turnover matter on May 29, 2015. On June 4, 2015, the court filed an

_____

[2]    Because there were no funds in the account ending in 2446, the only account at issue in this appeal is the one ending in 7359. Subsequent references to "the account" or the "Merrill Lynch account" are to the account ending in 7359.

3

order for delivery of property.  The court ordered that all the assets in the Merrill Lynch account "shall be forthwith liquidated and all net proceeds therefrom shall be immediately turned over to [Continental's] counsel by wire transfer, as per instructions supplied by [Continental]."  The court further ordered that Merrill Lynch provide an accounting to the parties and that its "previous order freezing these assets shall remain in full force and effect until the turn over is complete."  The court gave notice "that failure to comply with this order may subject Merrill Lynch to arrest and punishment for Contempt of Court."

By letter dated June 17, 2015, Merrill Lynch's counsel, who also represents Bank of America in this case, provided Crockett's counsel and Continental's counsel the court-ordered accounting.  The letter stated the Merrill Lynch account was "pledged in its entirety as collateral to [Bank of America] on a loan made by [Bank of America] to another entity that is not subject to the [court's June 4] Order. . . . [Bank of America], through a security instrument, holds a first priority lien on the assets, perfected by control, in account ending in *7359 to secure the loan."  The loan amount secured by the account was $3,086,560.46, excluding accruing interest.  The letter stated Merrill Lynch was in the process of liquidating the assets in the account, which were "comprised of municipal bonds, mutual funds, cash equivalents, and an alternative investment.  The market value [of the account] as of the close of business on June 16, 2015 was $3,967,156.19.  The net equity amount after the loan is paid off [would] be approximately $880,595.00 as of the close of business on June 16, 2015."  The letter stated that the process of liquidating the assets in the account pursuant to the court's order would

4

involve Bank of America's giving the loan parties a notice of demand and instructing Merrill Lynch to apply the proceeds of the account to repay the loan. Upon liquidation of the account and repayment in full to Bank of America of the loan amount, Merrill Lynch would "wire transfer the net proceeds to counsel for Continental . . . ."

The day after receiving the June 17, 2015 letter from Merrill Lynch's counsel, Continental filed an ex parte application for a TRO preventing Merrill Lynch from disbursing any of the assets in the account "to any person or entity except as specifically provided in the Court's Order . . . filed on June 4, 2015." Specifically, Continental sought to restrain Merrill Lynch from disbursing any money or assets from the account to Bank of America for repayment of its loan. Continental's ex parte application included a copy of the June 17, 2015 letter from Merrill Lynch's counsel.

The court held a hearing on Continental's ex parte application on June 19, 2015. Merrill Lynch appeared at the hearing through counsel. The court directed Continental's counsel to prepare an order requiring Merrill Lynch to turn over the money in the account after liquidation with "no payouts to any lien holders from the account prior to the turnover." The court informed Merrill Lynch's counsel that "if Merrill Lynch were to pay off Bank of America in the interim, there would be a basis [upon] which this Court can find Merrill Lynch to be in contempt of court." Merrill Lynch's counsel requested permission to be heard. The court denied counsel's request on the ground Merrill Lynch was not a party and did not have standing.

The June 19 ex parte hearing resulted in the June 24, 2015 turnover order that Bank of America and Merrill Lynch have appealed. The turnover order restated the

provisions of the court's June 4, 2015 order requiring Merrill Lynch to liquidate all of the assets in the account, immediately turn over the net proceeds from the account to Continental's counsel, and provide an accounting to the parties. The order also reiterated that the court's "previous order freezing these assets shall remain in effect until the turn over is complete." The June 24 order added the directive that "Merrill Lynch shall pay all said proceeds as directed without payment to any other alleged creditor, alleged secured party, or any other claimant." The order gave notice "that failure to comply with this order may subject Merrill Lynch to punishment for Contempt of Court."

On June 24, 2015, the same day the court entered the turnover order, Bank of America filed an ex parte application for leave to file a complaint in intervention and to stay the June 4, 2015 turnover order pending resolution of its complaint or, alternatively, to stay the turnover order until it could have its application to intervene heard on regular notice. Bank of America contended that if the court did not grant its application, it would suffer irreparable harm or be placed in immediate danger of losing its security, and would be deprived of its constitutional due process rights.

The court held a hearing on Bank of America's ex parte application on June 30, 2015. The court denied Bank of America's request to stay the turnover order, but ordered all funds turned over under the order be held in Continental counsel's interest bearing trust account until further order of the court. The court set a hearing on Bank of America's motion to intervene for August 21, 2015 and set a briefing schedule for the motion. In August 2015, the court granted the motion to intervene and ordered that "[Bank of America's] intervention is limited to the purpose of determining whether [it]

6

has a senior security interest in the funds that are subject to the turnover order." Bank of America filed its complaint in intervention and Continental filed an answer to the complaint.

Appellants filed a notice of appeal in Riverside County Superior Court that identified the June 4 turnover order, the June 19 oral order denying Merrill Lynch the right to be heard, the June 24 turnover order, and the June 30 order. Division Two of the Fourth District Court of Appeal, before transferring the appeal to this Division, ordered appellants to file a letter brief addressing the issue of whether they have standing to appeal the June 4 and June 24 orders. After considering appellants' letter brief, the court issued an order allowing the appeal to proceed but directing the parties to address the issue of appellants' standing in their briefs. The court dismissed the appeal from the June 19, 2015 oral order and the June 30 order.

## DISCUSSION

### I. *Appealability*

The parties dispute whether the June 24, 2015 turnover order is an appealable order. Continental contends the turnover order is not appealable because it is not a final judgment. Essentially, Continental argues that because the issue of whether Bank of America has a priority security interest in the Merrill Lynch account will be determined in the adjudication of Bank of America's complaint in intervention, the appeal from the turnover order is premature. Appellants contend the turnover order is appealable under section 904.1, subdivision (a)(2) as an order after judgment and under subdivision (a)(6)

7

as a mandatory injunction.  We agree with appellants and note that Continental did not address appellants' specific appealability arguments.

An order entered after an appealable judgment is itself appealable under section 904.1, subdivision (a)(2).  However, not every postjudgment order is appealable.  (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 (*Lakin*).)  "To be appealable, a postjudgment order must satisfy two additional requirements. . . . [¶] The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment.  [Citation.]  'The reason for this general rule is that to allow the appeal from [an order raising the same issues as those raised by the judgment] would have the effect of allowing two appeals from the same ruling and might in some cases permit circumvention of the time limitations for appealing from the judgment.'  [Citation.] . . . [¶] The second requirement . . . is that 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.'  [Citation.]  Under this rule, a postjudgment order that does 'not affect the judgment or relate to its enforcement [is] not appealable . . . .' "  (*Id.* at pp. 651-652.)  In addition, the postjudgment order must not be preliminary to further proceedings and become subject to appeal after a future judgment.  (*Id.* at p. 654.)

The turnover order satisfies these requirements for an appealable postjudgment order.  The instant appeal from the order raises issues that are different from and unrelated to any issues that could arise from an appeal from the judgment, and the order clearly relates to the judgment because Continental sought the order as a means of enforcing its judgment under the EJL.  Further, the order does not on its face contemplate

further proceedings and is not subject to an appeal after a judgment is entered on Bank of America's complaint in intervention.[3]

The turnover order is also appealable as a mandatory injunction. Section 904.1, subdivision (a)(6) makes appealable "an order granting . . . an injunction . . . ." An injunction is "a writ or order commanding a person either to perform or to refrain from performing a particular act." (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1160; *Luckett v. Panos* (2008) 161 Cal.App.4th 77, 84.) An order compelling a person to perform a particular act constitutes a mandatory injunction and, as such, is an appealable order under section 904.1, subdivision (a)(6). (*Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1118, fn. 1.) The June 24, 2015 turnover order compelled Merrill Lynch to perform the particular acts of liquidating the assets in the Merrill Lynch account and turning over the proceeds from the liquidation to Continental's counsel. Thus, the order is appealable as a mandatory injunction.

---

[3] The appeal does not raise the same issue raised in Bank of America's complaint in intervention–i.e., whether Bank of America's security interest in the Merrill Lynch account is superior to Continental's; it raises the issue of where the turned over funds from the Merrill Lynch account should be held until the complaint in intervention is adjudicated. The relief it seeks is reversal of the turnover order, which would simply require those funds to be returned to the Merrill Lynch account rather than being held in Continental's attorney's trust account.

## II. *Standing to Appeal*

As noted, the parties were directed to address the issue of appellants' standing in their briefs. We conclude both Bank of America and Merrill Lynch have standing to appeal.

Whether an appellant has standing to appeal is a question of law and is jurisdictional. (*People v. Hernandez* (2009) 172 Cal.App.4th 715, 719-720 (*Hernandez*).) "We liberally construe the issue of standing and resolve doubts in favor of the right to appeal." (*Apple, Inc. v. Franchise Tax Bd.* (2011) 199 Cal.App.4th 1, 13.) Section 902 governs standing to appeal and provides that "[a]ny party aggrieved may appeal in the cases prescribed in this title." A party "is considered 'aggrieved' [if the party's] rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest 'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment.' " (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 (*County of Alameda*).)

As a general rule, only parties of record have standing to appeal. (*County of Alameda*, *supra*, 5 Cal.3d at p. 736; *Hernandez v. Restoration Hardware, Inc.* (2016) 245 Cal.App.4th 651, 657.) However, the rule is not ironclad. Under the heading, "Who May Appeal," the Code Commissioners' Notes to section 902 state that "[o]ne not a party to the record may appeal, if aggrieved by the judgment." (Code commrs., notes foll. 17B West's Ann. Code Civ. Proc., § 902 (2009 ed.) p. 10.) The Commissioners' Notes cite *Adams v. Woods* (1857) 8 Cal. 306 (*Adams*), in which the California Supreme Court held that a party aggrieved by a judgment has the right to appeal the judgment even though the

10

appellant is not a party of record. (*Id.* at pp. 314-315.) As the Court of Appeal noted in *In re FairWageLaw* (2009) 176 Cal.App.4th 279 (*FairWageLaw*): "Nonparties who are aggrieved by a judgment may appeal from it. '[A]ny entity that has an interest in the subject matter of a judgment and whose interest is adversely affected by the judgment is an aggrieved party and is entitled to be heard on appeal.' " (*Id.* at p. 285.)

In *Hernandez*, nonparty pawnbrokers appealed an order that required them to return stolen property in their possession to its purported owners. (*Hernandez, supra,* 172 Cal.App.4th at p. 719.) The trial court issued the order without providing notice to the pawnbrokers. (*Ibid.*) A panel of this court in *Hernandez* noted that "[a]ny party legally aggrieved by a challenged ruling has standing to appeal it [citation] and a nonparty that is aggrieved by a judgment or order may become a party of record and obtain a right to appeal by moving to vacate the judgment. [Citation.] Additionally, a nonparty may appeal if a judgment or order has a res judicata effect on the nonparty. [Citation.] Such an effect on the nonparty must, however, be 'immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment [or order]' in order to confer standing." The *Hernandez* panel concluded the nonparty pawnbrokers had standing to appeal because "the challenged order [was] binding and the injurious effect of the order on the pawnbrokers was immediate, pecuniary and substantial." (*Id.* at p. 720.)

Bank of America was similarly aggrieved by the turnover order because the order at least temporarily deprived it of its claimed security interest in the Merrill Lynch account, and threatened to permanently deprive it of that interest without due process. Bank of America was further aggrieved by the order because it forced Merrill Lynch to

11

liquidate the assets in the account, thereby limiting the growth potential of the account. (See *Blumenthal v. Di Giorgio Fruit Corp.* (1938) 30 Cal.App.2d 11, 19 [injunction to restrain payment of stock dividends under recapitalization plan could result in a forced liquidation of stock that would seriously injure stockholders who accept the benefit of the plan].) The order on its face is binding and the injurious effect of the order on the Bank of America was immediate, pecuniary and substantial.

The turnover order is injurious to Bank of America regardless of the court's ultimate determination of the priority of Bank of America's claimed security interest in the Merrill Lynch account because, as we discuss *infra*, the order deprived it of its security interest without notice and an opportunity to be heard on the issue of whether its interest was superior to Continental's claimed interest in the account as a judgment creditor. "The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing." (*Fuentes v. Shevin* (1972) 407 U.S. 67, 87 (*Fuentes*).) "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. *But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred.*" (*Fuentes*, *supra*, at pp. 81-82, italics added.) Thus, whether or not the trial court ultimately determines Bank of America's security interest in the account is superior to Continental's

12

interest, Bank of America is aggrieved by the turnover order because the order deprived it of its alleged interest in the account without the opportunity to be heard.

Merrill Lynch is also aggrieved by the turnover order, which, as we discussed above, is a mandatory injunction that compelled Merrill Lynch to liquidate the assets in the account and the turn over the proceeds from the liquidation to Continental's counsel under the threat of contempt. Merrill Lynch became a party of record when it appeared under a court order for a third person examination under section 708.120. On that point, *Pacific States Savings & Loan Co. v. Mortimer* (1945) 70 Cal.App.2d 811 (*Pacific States*) is instructive.

In *Pacific States*, the appellant corporation appealed an order authorizing the "commissioner in liquidation" to sell certain parcels of real property owned by the corporation. (*Pacific States*, *supra*, 70 Cal.App.2d at pp. 812-813.) The corporation appeared in the proceedings and contested the proposed sales in response to an order to show cause why the sales should not be approved. (*Id.* at pp. 813-814.) The respondent commissioner contended the corporation lacked standing to appeal. The Court of Appeal disagreed, noting that "[o]ne may become a 'party to the record' by an order to show cause which brings him into the proceeding and enables the court to make an order adverse to him." (*Id.* at p. 814.) The court concluded that because the corporation was brought into the proceeding by an order to show cause and appeared to contest the order for sale, it became a party entitled to appeal from that order. (*Ibid.*) Similarly, in the present case, Merrill Lynch was ordered to appear in the proceeding by Continental's

13

third person examination subpoena, and it was ordered to turn over the account under threat of contempt. It thereby became a party entitled to appeal from the turnover order.

*Anglo-Californian Bank v. Superior Court* (1908) 153 Cal. 753 (*Anglo-Californian*) is also analogous to the present case. In *Anglo-Californian*, the plaintiff bank held funds belonging to an insolvent corporation undergoing involuntary liquidation in receivership. (*Id.* at p. 754.) The bank refused to pay the corporation's receiver portions of the corporation's funds that two third parties claimed were owed to them. The court issued an order to show cause why the bank should not be ordered to pay the withheld funds to the receiver and, after a hearing, ordered the bank to pay those funds to the receiver. (*Id.* at pp. 754-755.) The bank challenged the order by writ petition, the California Supreme Court granted a writ of review, and the defendants (the superior court and a judge) argued that issuance of the writ was improper because the bank had standing to challenge the order by appeal. (*Id.* at pp. 755-756.) The Supreme Court agreed and dismissed the writ proceeding, concluding the order was appealable as a final adjudication against the bank in a collateral proceeding and the bank had standing to appeal because it was "a party to the record, so far as such collateral proceeding was concerned, having been brought in as such a party by the order to show cause . . . ." (*Id.* at p. 756.)

Merrill Lynch similarly became a party to the record with standing to appeal the turnover order because it was brought into the case by an order to appear in the judgment enforcement proceeding. Merrill Lynch was aggrieved by the turnover order because the

14

order compelled it, under the threat of contempt, to liquidate the assets in the account and then lose the account by turning it over to Continental's counsel.

## III. *Due Process*

Appellants contend the turnover order should be vacated because Bank of America was not provided adequate due process before it was deprived of its security interest in the subject account. We agree.

"Both the federal and state Constitutions compel the government to afford persons due process before depriving them of any property interest. [Citations.] In light of the virtually identical language of the federal and state guarantees, [California courts] have looked to the United States Supreme Court's precedents for guidance in interpreting the contours of our own due process clause and have treated the state clause's prescriptions as substantially overlapping those of the federal Constitution. [Citation.] [¶] 'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." ' [Citations.] The opportunity to be heard must be afforded 'at a meaningful time and in a meaningful manner.' " (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 (*Today's Fresh Start*).) As we noted above, "[i]f the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." (*Fuentes*, *supra*, 407 U.S. at p. 81.)

" 'The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty." [Citations.] Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport

15

with due process.' " (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 214.)  A "security interest" is an interest in personal property or fixtures that secures payment or performance of an obligation.  (Cal. U. Com. Code, § 1201, subd. (b)(35).)  Accordingly, the June 24, 2015 turnover order deprived Bank of America of a protected property interest.

The court issued the turnover order without first providing Bank of America notice or an opportunity to be heard.  The court was made aware of Bank of America's security interest, at the latest, through Continental's ex parte application filed on June 18 and heard on June 19, 2015.  Continental's application included the June 17 letter from Merrill Lynch's counsel informing Continental of Bank of America's security interest and Merrill Lynch's intent to transfer to Continental the net proceeds of the account after paying Bank of America the balance owing on its loan secured by the account.  The purpose of Continental's ex parte application was to prevent Merrill Lynch from transferring any funds from the account to Bank of America, and its application was successful.  As a result of the hearing, the court ordered Merrill Lynch to turn over the money in the account after liquidation with no payouts to any lien holders from the account prior to the turnover.  The court expressly warned Merrill Lynch's counsel that there would be a basis to hold Merrill Lynch in contempt of court "if Merrill Lynch were to pay off Bank of America in the interim[.]"

In determining what process is due, courts balance three considerations:  " 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable

16

value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 213.) Bank of America's "private interest" (i.e., security interest) in over $3 million of the funds transferred to Continental's counsel under the turnover order is substantial, as is the risk of erroneous deprivation of that interest in light of the order's implied finding that Continental's interest in the account as a judgment creditor is superior to Bank of America's security interest. Providing Bank of America notice and an opportunity to be heard before ordering Merrill Lynch to turn over the entire account to Continental's counsel would not have imposed a significant fiscal and administrative burden on the government (i.e., the court). To the contrary, it would have obviated the need for further proceedings seeking to stay or undo the turnover order, including this appeal.

Although Merrill Lynch was not deprived of notice of the June 19, 2015 hearing resulting in the June 24 turnover order, it was deprived of the opportunity to be heard regarding Bank of America's security interest. As noted, the court denied Merrill Lynch's request to be heard at the June 19 hearing because the court concluded Merrill Lynch was not a party and did not have standing. The court's issuance of the order requiring Merrill Lynch to turn over the entire account *before* allowing Bank of America or Merrill Lynch to be heard on the issue of whether Bank of America's security interest in the account was superior to Continental's interest in the account deprived Bank of America of its constitutional right to due process. When "the trial court denies a party his right to a fair

hearing, it exceeds its jurisdiction, and the error is *reversible per se.*" (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 292.)[4]

DISPOSITION

The turnover order entered on June 24, 2015 is reversed and vacated. The court is directed to enter an order requiring Continental's counsel to return the funds counsel received from the Merrill Lynch account to Merrill Lynch to be held pending resolution of Bank of America's complaint in intervention. Appellants are awarded their costs on appeal.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.

---

[4]    In light of our decision to vacate the turnover order and direct return of the subject funds to the Merrill Lynch account, we need not address appellants' contentions that the court issued the turnover order without complying with the EJL and Corporations Code section 15907.03. Any defenses to a future turnover order of funds held in the Merrill Lynch account may be asserted by parties with standing to do so in the future proceedings.