## RUBY v. EWING ET AL.

[No. 7,485.   Filed March 5, 1912.]

1.   APPEAL.—*Consideration of Special Findings.—Facts Omitted.—Evidence.*—On appeal the facts contained in the special findings, where supported by some evidence, will be taken as true; and the court will go beyond such findings, only where the facts therein contained are unsupported by the evidence, or where additional facts, not therein contained, are shown by the evidence.   p. 525.

2.   DEEDS.—*Setting Aside.—Consideration.—Support and Maintenance.—Evidence.*—Evidence that a father seventy-seven years old had theretofore conveyed his land, except forty acres to his children, reserving to himself a life estate therein, that he was intemperate and required constant care, that he conveyed such forty-acre tract to his daughter, reserving a life estate therein, in consideration of care and support, that such daughter and her husband accepted the terms of such contract, and at all times, were ready and willing to perform their part of it, that he left their home and brought suit to set aside such conveyance, the evidence further showing that they practiced no fraud, made no misrepresentations, nor exerted any undue influence upon him, and that the deed was made wholly at his suggestion and when he was in full control of his senses, supports a judgment in favor

of defendants, though such father remarked, after the execution of such deed, that if the grantee predeceased him the land would "come back" to him.  p. 526.

3. CONTRACTS.—*Aged People.—Care and Support.—Deeds.*—Very slight circumstances will cast the burden of sustaining contracts made by aged, feeble, illiterate, or weak-minded people, upon those maintaining the validity thereof.  p. 527.

4. CONTRACTS.—*Mistakes of Law.—Deeds.—Cancellation.*—Equity will not cancel a deed made under a mistake of law, where such mistake was made by one party only. ' p. 527.

From Rush Circuit Court; *Will M. Sparks*, Judge.

Suit by Jacob Ruby against Martha A. Ewing and another. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*J. L. Shelton* and *Douglas Morris*, for appellant.
*Watson, Titsworth & Green*, for appellees.

IBACH, P. J.—Action by appellant against appellees to cancel and declare void a certain deed, for a forty-acre tract of land situated in Rush county, Indiana, executed by appellant to appellee Martha A. Ewing. The cause was tried by the court, which made special findings of fact, with conclusions of law in favor of appellees, and rendered judgment thereon against appellant. The errors properly assigned and relied on for reversal are that the court erred (1) in its conclusion of law, and (2) in overruling appellant's motion for a new trial, on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law.

The special findings, in substance, are as follows: On February 10, 1908, plaintiff was an unmarried man seventy-seven years of age, in fairly good health and fairly well preserved for his years. He was illiterate and unable to read and write, but was of average intelligence and business ability. He had been twice married, and both of his wives were deceased. Four children by his first marriage and four by his second marriage were living, all of age. In the year 1904 he deeded the fee in his "home farm" of 140 acres to his children, reserving for his own use and benefit a life estate

therein, and he has since received the rents and profits therefrom. On February 10, 1908, forty acres of real estate, adjacent to his "home farm", was the only land owned by him in fee. He had said he was retaining this tract in order to give it to the person who would take care of him. Because of his age and intemperate habits, it had been necessary for some years for some one to live with and care for him, and since the death of his second wife one or more of her children had done this. His children by both wives were married, except his youngest son, Jesse Ruby, who was a professional baseball player, and was at home very little. Frances Wolfe, his youngest daughter, was married prior to August, 1906, and since that time had not lived at her father's home. Defendant Martha A. Ewing, the oldest daughter by the second wife, lived on a farm, owned by her husband's father, prior to August, 1906. Edward Ruby, the oldest son by the second wife, his wife and children, who had lived at the home place with plaintiff, and taken care of him under a rental contract for some time, notified his father and sisters in August, 1906, that he would stay there no longer than fall, and left shortly after. The children of the second wife, except Jesse, discussed the matter, and agreed that it was not then practicable for Mrs. Wolfe and her husband to leave their home and live with her father. So, at the request of plaintiff and Frances Wolfe, defendants Martha A. Ewing and Greeley Ewing, her husband, moved in with plaintiff at the home place about August, 1906, under a rental contract of the same terms as that which Edward had with his father. Defendants and plaintiff carried out their agreement, and plaintiff lived with defendants until February 19, 1908, when he left said home at the solicitations and under the coercion of his son Edward Ruby, and has since that time made his home with Edward Ruby and Frances Wolfe, and has not resided with his daughter Martha A. Ewing, though he has five or six times visited her in the company of some other person. During the greater por-

tion of his life, and for many years prior to February 10, 1908, plaintiff was addicted to the use of intoxicating liquor, and often used it to excess; and at times became incapacitated for business, and even for caring for himself, which defendants knew. At certain times from August, 1906, to February, 1908, when he was brought home by friends, his daughter Martha A. Ewing cared for him as his condition required. Plaintiff continued to drink, and on account of his having exposed himself to cold weather and to various dangers, Martha A. Ewing concluded that it would be better for him to keep him at home and control his drinking, rather than to let him go on drunken sprees away from home. She consulted doctors who had formerly treated plaintiff, and they advised that, because of his former habits, she give him small quantities of whisky at intervals, but not enough to make him drunk. Pursuant to this policy, Greeley Ewing during the winter of 1907 and 1908 purchased whisky at the request of plaintiff, and it was administered to him at his home on an average of three times a day during November, December and January. During January his daughter Martha was compelled to conceal the whisky from plaintiff, except when she administered it to him, but he succeeded in finding it frequently, and during the latter part of January and the first part of February he was more or less intoxicated all the time. On February 8, 1908, the supply of liquor at his home gave out, and he had no whisky from 10 o'clock that day until after February 10, and on said February 10 he was in his right mind and sober. On February 3 he rolled out of bed and fell on a chair, fracturing three of his ribs, and was in pain on this account for three or four days. A physician called on February 4 to treat the fracture advised giving him whisky in small amounts. On the forenoon of February 10 his son Edward came to plaintiff's home, and, in the presence and hearing of appellee, offered to give $2,500 for the land in controversy, $500 to be paid to each of the four children of plaintiff by his sec-

ond wife, and to Mrs. Lee, one of his children by his first wife. To this Martha A. Ewing objected, and told her father and brother that it would not be fair to the three children by the first wife who would get nothing by such sale. Plaintiff refused to sell said land to Edward, and the latter left the homestead. Shortly after this, plaintiff stated to Martha A. Ewing that he knew what was up, that the boys were trying to get the forty-acre tract, and that he would put it where it belonged; that he had given the boys and Fannie all he expected them to have, and he would give the forty-acre tract to Martha, if she would keep him the rest of his life; that he wanted her and her husband to live with him, wanted to fix the thing right now, and wanted the deed made like the old ones, so he would get the rents and profits during his lifetime. Thereupon Martha accepted his proposition, and agreed to perform her part. Plaintiff told Greeley Ewing to get Owen S. Hill, the notary who had made the former deeds, which he did, and Hill came to the house in the afternoon of the same day—February 10, 1908—and plaintiff conveyed by warranty deed to his daughter Martha A. Ewing the forty acres of real estate described in the complaint, which deed was duly acknowledged before Owen S. Hill of Carthage, Indiana, a notary public, and was duly delivered to the grantee therein on the same day it was signed, but no actual money consideration passed between the parties. The notary read the deed to plaintiff before he signed it. This deed is in the ordinary short form of warranty deeds, the consideration being stated as "love and affection and $1, the receipt whereof is hereby acknowledged." The conveyance is made "subject to rents and profits and possession during the life" of the grantor, and is signed by plaintiff by his mark. It is properly acknowledged, and was duly recorded the next day. Plaintiff, after the deed was read in his presence by the notary, said: "Well, let me sign it." After he signed it by making his mark, and acknowledged it, he said: "If Martha dies before I do, the land is mine." Thereupon the

notary delivered said deed to Martha A. Ewing, and the next morning plaintiff told Martha's husband to take the deed to Rushville and have it recorded, which he did. Defendants fully carried out and observed all the provisions of the rental contract that they and plaintiff entered into at the time they moved upon his farm, and have been at all times, and are now, ready and willing to carry out the provisions thereof, and to comply with and fulfill all the provisions of the deed executed by plaintiff to his daughter. Before bringing this suit plaintiff requested defendants and each of them to reconvey to him the forty acres of land, which they and each of them refused to do.

The conclusion of law is as follows: "From the above facts I conclude that the law is with the defendants, and that they should recover of and from the plaintiff their costs in this action laid out and expended."

Appellant's counsel contend that the evidence, if not the special finding of facts, shows that the deed in controversy was executed by an aged, illiterate man, who did not comprehend its terms, but believed that it conveyed an estate that would revert to appellant if appellee Martha A. Ewing should die before him, and believed that it bound her to maintain him during his life, which facts were known to appellees, and appellant would not have executed the deed had he not misapprehended the contents and purport thereof. It is also contended that the evidence and finding of facts show that the deed was obtained through fraud, imposition and duress practiced by one who occupied a fiduciary relation to appellant, an old, illiterate man, who at the time of making the deed was intoxicated, and was suffering from the effects of a prolonged spree and from broken ribs.

There is a conflict as to many points, but the evidence substantially tends to support every material finding of fact. Such being the case, we are not authorized to

1. go beyond the finding of facts to the evidence, except where such finding is unsupported by the evidence,

or where there are additional facts shown by the evidence and not embraced in the finding. One material fact disclosed by the evidence, and not embraced in the findings, is that both appellees state that the real consideration for the deed was their agreement to support and take care of appellant for the remainder of his life, which they profess themselves ready and willing to do.

As to the first contention of appellant's counsel, it appears that, though aged and illiterate, appellant yet possessed ordinary business ability; that the deed was made at his 2. suggestion; that he wished the notary to make it like the former deeds, which was done, reserving a life estate in appellant; that after it was executed he told appellee Greeley Ewing to have it recorded; that he heard it read, and afterwards signed it willingly, then made the remark: "If Martha dies before I do, the land will come back to me." This, at most, is merely the expression of an opinion, seemingly as to the legal effect of the instrument. Yet he said he wanted the deed made like the other deeds, and they had no provision for reversion. There is no testimony that appellees misrepresented to appellant that the instrument contained a provision of such a character, or misrepresented to him the legal effect of the deed. In the accounts of the transaction between Martha A. Ewing and appellant before the making of the deed, when she agreed to keep appellant if he would deed to her the forty acres of land, there is no mention made that it was a part of the contract that the land should revert to appellant in case Martha A. Ewing died before him. This contract between the parties preceded the making of the deed, and the making of the deed was the carrying into execution of appellant's part of the contract. Appellant testified that after he and Martha A. Ewing had entered into the agreement, "Greeley told me that the land would go back to me; I would get the land if she died before I did." Not only was this remark made after appellant had proposed to and agreed to execute

the deed, but it appears to be no more than the opinion of appellee Greeley Ewing, not intended as an inducement to persuade appellant to execute said deed. It would seem from the testimony of the parties and of the notary that some of them believed that there was a statute which provided that lands transferred for love and affection would revert to the donor if the donee died before him. It does not seem that appellant became at all dissatisfied, because of the deed he had made, until his son Edward had talked with him. By the finding of facts, which is supported by evidence, it appears that appellant took the initiative in making the deed. No coercion or persuasion whatever on the part of appellees is shown.

As to appellant's being intoxicated, the testimony of practically all the witnesses is that he was sober and in his right mind on the day the deed was made. Appellees testify positively that there had been no whisky in the house since February 8. To offset this, there is merely appellant's testimony that he had whisky and was rather drunk, which he based on his general recollection that his daughter had been giving him three drinks of whisky a day near that time, and that ordinarily he had whisky, and during the past month had been drunk most of the time. However, appellant's general recollections are shown to have been very poor.

We are in full accord with the cases cited by appellant, to the effect that very slight circumstances will cast upon the party asserting the validity of a contract the

3. burden of sustaining it, where the other party is old, feeble or illiterate, and is weakminded from any cause, yet we do not believe that grounds for relief are shown in the present case, in the face of the decision of the lower court to the contrary.

We find no facts showing that appellant was coerced, unduly influenced, or taken advantage of in any way.

4. It seems that the execution of the deed was his free act. Possibly he may have been mistaken as to the

legal effect of the instrument executed, in believing that the law provides that an instrument in the very terms of the one executed will bring about a reversion to the donor in case of the death of the donee before the donor. It does not appear that if there was such a mistake it was brought about by fraud or misrepresentation of another. In certain cases equity will reform an instrument for mistake of the parties, but it will not cancel an instrument for mistake of law of one party.

Judgment affirmed.