First Nat. Bank of Canton *v.*. Hesdorffer.

[65 South. 507.]

Appeal and Error. *Acquiescence in decree by appellant. Acts constituting.*

Where complainant appealed without *supersedeas* from ʹa decree, directing a sale of land to pay the amount due to a defendant and to apply the balance to complainant's claim, purchased the land for his own protection at the commissioners sale, which sale was ordered by the defendant pending the appeal, by such purchase complainant did not acquiesce in the decree, and did not release the errors relied on in his appeal.

Appeal from the chancery court of Madison county.

Hon. P. Z. Jones, Chancellor.

Suit by First National Bank of Cannton against Isador Hesdorffer, and others. From a decree granting insufficient relief, complainant appeals.

The appellee was a director in the First National Bank of Canton, and was a member of the discount committee of said bank. Upon his recommendation, the bank loaned the Durant Commercial Company, a corporation, the owners of which were Wm. Schilds, Mrs. J. M. Schilds, and J. Marseilles, the sum of six thousand dollars; Mrs. Schilds and Marseilles indorsing the note in blank. The appellee represented to the other directors of the appellant bank that Marseilles and Mrs. Schilds were well off and worth a good deal more than the amount loaned. The indebtedness was represented by a note extending over a period of about eleven months. Before the note fell due, the Durant Commercial Company failed. Partial payments had been made on the note, but there was still an unpaid balance amounting to two thousand, two hundred and twenty-seven dollars and fifty-six cents. There was also an overdraft of one thousand six hundred

and ninety-seven dollars and seventy-eight cents. After the failure of the Durant Commercial Company, it developed that Marseilles and the Schilds had, some time before the loan was procured from the appellant bank, executed deeds of conveyance to their property to appellee, claiming that it was for the purpose of securing an indebtedness due appellee and his brother, Ben Hesdorffer, because of their indorsement of a note of five-thousand dollars, made several years before, and long since past due and unpaid.

Thereupon the First National Bank filed a suit in the chancery court of Madison county against Isador Hesdorfffer, J. Marseilles, and Mrs. J. M. Schilds, to recover the balance due said bank, alleging that Hesdorffer had procured the loan for the Durant Commercial Company upon the representation to the bank that Mrs. Schilds and Marseilles were well off, and had not disclosed to said bank, of which he was a director, the fact that he held deeds to their property, and that said deeds were therefore fraudulent and void. The bill sought to cancel said deeds and to hold the lands conveyed thereby for the balance due the bank. After the filing of the bill, an agreement of the attorneys was reached, whereby a bond was given by the defendants to answer whatever the decree of the court might be, and thus obtain a release of the property from the *lis pendens* lien, which had been fastened upon it by the filing of the bill. On the hearing, the chancellor held that the deeds to the lands of Mrs. Schilds and Marseilles were void, and directed Marseilles and Mrs. Schilds to execute quitclaim deeds to D. C. McCool, commissioner, and held, further, that these deeds should be considered as deeds of trust for the benefit of Isador Hesdorffer and Ben Hersdorffer, and directed the commissioner to sell the lands in question and pay, first the amount due the Hesdorffers and all costs, and the balance to be applied on the debt due by the Durant Commercial Company to the First National Bank, and by

that decree declared these two debts to be liens against the property in the order named. The bank, appealed to the supreme court without *supersedeas*.

While this appeal was pending, the commissioner, at the request of Hesdorffer, proceeded, in accordance with the terms of the decree to advertise the land for sale and to sell same at public outcry. At said sale, appellant appeared by attorney and bought in part of the land. The commissioner reported the sale back to the chancellor, and same was confirmed without objection from appellant. Thereafter appellee filed a plea in bar of this appeal, alleging that since the appellant had appeared and purchased part of the property advertised and sold, and had consented to the sale under the decree, and had accepted a deed to the land and paid the purchase money to the commissioner, appellant was therefore barred from further prosecuting this appeal. To this plea appellant filed a replication, setting up the fact that it had nothing to do with the execution of the decree, as the appeal was without *supersedeas,* and that the control of same was in the hands of appellee, and that upon being advised of the sale of certain property under this decree, and being advised that it was valuable property, it appeared, in order to protect its own interests, and to prevent the property from sale for a nominal price, and bid in the property at a fair price, and paid the purchase price, and received a deed. Appellant denied that it had ever received any benefit under the decree, but claimed that the commissioner had paid appellant nothing, and that it did not know how the money received from the sale of this particular property purchased by it had been applied, and that it still had a right to have the case heard on appeal on its merits. The appellee then filed a demurrer to this replication, and subsequently a motion to dismiss the appeal, on the ground that the demurrer was well taken, and the case should be dismissed, even on the statements and admissions in the replication.

*H. B. Greaves,* for appellant.

After consulting a number of authorities, as I have given this special plea in abatement careful consideration, I find the general rule to be this: "No litigant is permitted a review of an entire judgment, or decree, the parts of which are mutually interdependent, after he has acquiesced in its terms by enforcing it, or taking advantage of the provisions in his favor." This seems to be the rule, as arrived at by the author, after a careful review of most of the cases cited in the notes, to the case of *McCain* v. *Mullen,* reported in 29 L. R. A. (N. S.), page 1.

It will be borne in mind in this instant case that this appeal did not operate as a *supersedeas,* and that the appellant herein did not request the commissioner to act under the decree, but that all steps that have been taken in this suit were taken at the instance of appellee. That appellant has not been consulted in any transaction that has taken place since the decree was entered by the chancellor, and has received nothing from the commissioner under the decree.

It will further be born in mind that under an appeal without *supersedeas,* that the decree may be enforced at the instance of the party desiring it enforced. In this case the appellee desired it enforced—not the appellant. Again, it will be borne in mind that no advantage has accrued to the appellant in this case. That appellant simply purchased, as a third person, the land in controversy, and paid its money for said lands over to the commissioner, the distribution of which money appellant has not concerned itself with, and would not have received any of said money whatever, had same been tendered this appellant.

It is perfectly manifest, had the appellants received the entire sum of money due it, and for which this suit was brought, that their right would have been extinguished, and there would be no further necessity for an

appeal, and the plea here interposed would be good, but appellant has received nothing.

A Second Proposition: The appellant in this case assigns as error the postponement of appellant's demand to the demand of I. Hesdorffer, and his "Brother Ben," the contention of appellant being that if the conveyance to Hesdorffer could, under any sort of proposition, be considered to be a mortgage, or to have intended as a mortgage, then the act of Hesdorffer postponed his right under the mortgage to the right of appellant, and that the decree by the chancellor should have been (if the court does not take appellant's view as to the bond filed), that appellant's claim was prior to I. Hesdorffer's claim, and should have been paid before I. Hesdorffer and his Brother Ben.

. Under this view of the case it was the part of wisdom for the bank to see that the land in controversy was sold for enough to at least pay their claim before anybody else's. *Parsons* v. *Ruthfors,* 84 Miss. 70; *Adam* v. *Carter,* 92 Miss. 679; *Erwin* v. *Lowery,* 7 How. (U. S.) 172; *Meaders* v. *Gray,* 60 Miss. 400; 7 How. 172, S. C. 12 Law Ed. 655; *O'Hara* v. *McConnell,* 23 Law Ed. 840; *Clark* v. *Ostrander,* reported in 13 American Decisions, 546 (S. C. Cowen, N. Y.), page 437; *McCain* v. *Mullen,* 29 L. R. A. (N. S.), p. 1; *Cassell* v. *Fogar,* 11 Mo. 207; S. C., 47 Amer. Decisions, 151.

I cannot bring my mind to accept the theory advanced in the special plea filed in this case by the distinguished counsel for appellee. In my judgment, he is entirely mistaken in the nature of the benefit which appellants have received under this decree. They have received no special benefit under the decree. The only benefit appellant has received under the decree is such a benefit that any third person might have received, whether connected with the case or not. Appellant has claimed nothing under the decree, asking nothing under the decree, and ignoring the fact that the decree existed, having appealed without *su-*

*persedeas;* long before land was sold relying on the many assignments of error, among them being that the court erred in not giving a judgment on the bond, and if mistaken in that, then that the court had erred in not postponing the right of Hesdorffer to appellant.

*Green & Green,* for appellant.

The precise question here, freed from any obscurity, is this: · Can an appellant, who has purchased a part of part of the lands under the enforcement of the decree by appellee and which has received no money under the decree, be estopped to appeal to reverse the decree. Without pursuing the authorities in detail cited by appellee, we call attention to the failure of the cases cited to maintain the distinction between a judgment at law and a decree in equity, and such distinction is pointed out and emphasized in *Adams* v. *Carter,* 92 Miss. 590, *et seq.* and *Meaders* v. *Gray,* 60 Miss. 400; *Maiben* v. *Manlove,* 96 N. E. 501, *supra,* refers to judgment. So, also, *McCain* v. *Mullen,* 64 S. E. 829, citing, among other authorities, 2 Ency. Pl. & Pr. 174.

These citations emphasize the holding in *Adams* v. *Carter,* 92 Miss. 590, et seq., drawing the distinction between the rule in appeals from judgments at law and decrees in equity, and which expressly points out the reason of the rule applicable to judgments, does not apply to decrees in equity. The court further points out that the doctrine is governed in a great many states by statute (p. 591), hence where such is the case they would not be applicable here.

The confusion of authority is further illustrated by 2 Ency. Pl. & Pr., 174, 177, wherein, on page 176, it is declared that the rule is the same at law as in equity. *Adams* v. *Carter, supra,* expressly holds the contrary. And again, on page 177, the text recites: "As where a party accepts a conveyance made pursuant to the terms of a decree," citing *O'Hara* v. *McConnell,* 93 U. S. 150,

and the O'Hara case holds directly the opposite. The rule in this state is the same as that in the supreme court of the United States. The court in *Meaders* v. *Gray,* 60 Miss. 406, states: "In this case we are adopting the view of the supreme court of the United States in a similar case, *Erwin* v. *Lowry,* 7 How. 172," and this case is cited with approval in *Adam* v. *Carter,* 92 Miss. 594. *Erwin* v. *Lowry,* 7 How. (U. S.) 172, 12 L. Ed. 655. was a case in equity wherein a sale had been made under the decree and the money had been paid over to appellant under the decree, and by this the appellant was sought to be estopped to appeal, and the court held as to equity proceedings, as follows: We take the rule to be, that although a decree in equity is fully executed, at the instance of the successful party, who cannot complain of his own voluntary acts, if he does perform a condition imposed upon him before he can have the profits of the decree, although the other party derives benefit from such performance. If it was otherwise, a writ of error in such a case as the present, or an appeal in equity, might be defeated after the writ of error or appeal was sued out, or where there was no *supersedeas;* and here there was none. "Five years is the time allowed for prosecuting appeals to and writs of error out of this court, and in many cases decrees and judgments are executed before any step is taken to bring the case here; yet in no instance within our knowledge has an appeal or writ of error been dismissed on the assumption that a release of errors was implied from the fact that money or property had changed by the force of the judgment or decree. If the judgment is reversed, it is the duty of the inferior court on the cause being remanded to restore the parties to their rights." In the notes to this case in 12 L. Ed. 595, several cases are cited approving this rule.

In *O'Hara* v. *McConnell,* 93 U. S. 150, 23 L. Ed. 840, there was a deed made in performance of the decree, and in bar of the writ of error it was contended (23 L. Ed.

843): It is said that, after making the deed which the court ordered, the appellant is bound by it, and cannot now prosecute this appeal.

"The principal is unsound. The deed recites on its face that it was made under the order of the court. The parties must either have obeyed the order of the court, or taken an appeal and given a *supersedeas* bond in a sum so large that they were probably unable to do it."

"In no instance within our knowledge," says the court in *Erwin* v. *Lowery,* 7 How. 184, "has an appeal or writ of error been dismissed on the assumption that a release of errors was implied from the fact that money or property had changed hands by force of the judgment or decree. If the judgment is reversed it is the duty of the inferior court to restore the parties to their rights." That was a case where the appellant received the money which by the decree he recovered of the appellee, and is, therefore, a stronger case than the presnt, as his action would seem to ratify the decree.

This line of authority shows that our court follows the supreme court of the United States upon this proposition, and this would seem to end the controversy. It is very essential that the rule of our court should be the same as that of the supreme court of the United States, for if a decree was rendered involving questions, and it is not superseded and executed, and the cause was then taken from this court to the supreme court of the United States, and the appeal was sought to be dismissed in the supreme court because of the execution of the decree, and that court overruled the motion, and if the cause was reversed, would remand to the state court for the execution of the decree in accordance with the rules of the supreme court of the United States. Hence, in this class of cases uniformity of decision is essential.

*Mayes & Mayes,* for appellee.

Mr. Greaves begins his brief with certain statements about the "undisputed facts." In this he is in error.

For instance, he says, as one of the undisputed facts, that "at the special instance and request of the appellee, the commissioner, D. C. McCool, proceeded to execute the decree by advertising the several pieces of land," etc. We are not aware that Mr. McCool either waited, in the discharge of his official duty, to receive a special request from the appellee, or that the appellee made any such special request, or that the commissioner would have paid any attention to any special request which the appellee might make. It was his official duty, under the decree of the court, to proceed, without request from anybody; and we believe that he did so. We do not think the point is of any special legal significance, but we want the record kept straight. That Mr. McCool, an officer of the court, was moved or guided in his official action by Mr. Hesdorffer is a proposition that we are not prepared to accept—especially as an "undisputed fact." In his official capacity, he was simply and duly carrying out a decree rendered on the bank's prayer, and at the bank's instance.

We shall now submit some authorities which go to support our view of this case. In *Carpenter* v. *Camp. Mfg. Co.* (Va., March 9, 1911), 70 S. E., 496, it is said that: "A party cannot avail himself of that portion of a decree which is favorable to him, and secure its fruits, while prosecuting an appeal to reverse, in the appellate court, such portions as militate against him. The only exceptions to the rule are where the parts of the judgment or decree are separate and independent, and the receipt of a benefit from one part is not inconsistent with an appeal from another; or where the right to the benefit is conceded by the opposite party, so that it could not be denied should the other portions of the decree granting it be reversed."

"Many authorities are cited in support of this proposition, which is consonant to reason and good faith. See *More* v. *Williams*, 29 Ill. App. 597; *Bennett* v. *Van Syckle*,

18 N. Y. 481.'' In 2 Cyc., on page 651, it is said that: ''It is a rule well established that a party who obtains the benefit of an order or judgment, and accepts the benefit or received the advantage, shall be afterwards precluded from asking that the order or judgment be reviewed, or from denying the authority which granted it.''

Many cases from a number of states are cited to sustain that proposition. We refer to these citations by that text. See, also, *Coston* v. *Lee Wilson* (Ark.), 160 S. W. 857. Also, *Turner* v. *Markham* (Cal., Nov. 7, 1907), 92 Pac. 485, citing several California cases. Also, *Owens* v. *Phosphate Co.*, 115 Ga. 768; *Trapp* v. *Off*, 194 Ill. 287; *Maiben* v. *Manlove* (Ind., Nov. 16, 1911), 96 N. E. 501; *Sontag et al.* v. *Klee et al.*, 148 Ind. 536, 47 N. E. 962; *McGrew* v. *Grayson et al.*, 144 Ind. 165, 41 N. E. 1027; *William et al.* v. *Richards*, 152 Ind. 528, 53 N. E. 765; *Stern* v. *Vert et al.*, 108 Ind. 232, 9 N. E. 137; Ewbank's Manual of Practice, sections 112, 113; Elliott's App. Procedure, sec. 408; *Haggin* v. *Montague* (Ky., May 1, 1907), 101 N. W. 893. Also, *Parr* v. *Webb* (Mont., Jan. 19, 1910), 106 Pac. 353; *Krauss* v. *Krauss* (N. Jer., June 22, 1908), 70 Atl. 305; *Kreager* v. *Warnock* (N. Y.), 81 App. Div. 150; *Thomas* v. *Booth-Kelly Co.*, 52 Ore. 534; *McKain* v. *Mullen* (W. Va., April 27, 1909), 64 S. E. 829, 2 Cyc. 651; 2 Ency. Pl. & Pr., 174; *Payne* v. *Woolley*, 80 Ky. 568; *Dunham* v. *Rendall*, 11 Tex. Civ. App. 265, 32 S. W. 720; *Tyler* v. *Shea*, 4 N. D. 377, 61 N. W. 468; 50 Am. St. Rep. 660.

In Mississippi, we have but few decisions which touch that question. The first is the case of *Meaders* v. *Gray*, decided in 1882, 60 Miss. 400. In that case it was held that the rendition of a decree in the court below against the appellee for a certain sum, and the acceptance of the sum decreed by the appellant, did not estop the appellant from appealing, in the effort to increase the size of his judgment. This court will observe that Judge CAMP-

bell, having stated the case, said this expressly: "We decline to lay down a rule for any other stated case than that presented here." And then he proceeds to show that even that narrow case presented, the authorities were confusing, and the court was all at difference about what they really meant, only agreeing on the proposition that the bare acceptance of the money decreed by the appellant from the hands of the appellee, did not estop him to appeal. *Parson* v. *Rutherfore,* decided March, 1904, 84 Miss. 70; *Adams, Revenue Agent* v. *Carter,* decided in 1908, 92 Miss. 579.

The appellant further, in its replication, admits in express terms, that it bought the land for a speculation. If this isn't an election, what could be? They saw the glittering prize, and they grabbed it. They can't eat their cake and have it.

Smith, C. J., delivered the opinion of the court.

Appellant had no control over the execution of the decree appealed from, and therefore cannot be said to have acquiesced in its rendition, because it was executed by the commissioner appointed for that purpose, and its purchase at the commissioner's sale was not such an acceptance of the decree as constitutes a release of errors, if any, therein. By purchasing at this sale, appellant simply protected itself against probable loss, for the reason that, had it not purchased the land, it might have been sold to third persons for much less than its value.

The plea in bar of the appeal and the motion to dismiss are both overruled.

*Overruled.*