(March 1, 1927.)

MARY OATMAN and MARY OATMAN, as Administratrix of the Estate of JOHN OATMAN, Deceased, Appellants, v. LUTHER HAMPTON and LILLIAN HAMPTON, His Wife, DAVID SCHIFFER and CLARA SCHIFFER, His Wife, GUS D. THIESSEN, LILLY THIESSEN and GEORGE G. THIESSEN, Respondents.

[256 Pac. 529.]

APPEAL AND ERROR—APPEALABLE ORDER—AMENDMENTS TO SPECIFICATIONS OF ERROR—EVIDENCE—PUBLIC RECORDS—VENDOR AND PURCHASER—BURDEN OF PROOF—DEEDS—CANCELATION OF INSTRUMENTS—EQUITY—SUBROGATION—QUIETING TITLE—JUDGMENT—ORDER OF SUBSTITUTION—HUSBAND AND WIFE—COSTS.

1. In the absence of an affirmative showing to the contrary, notice of appeal will be presumed to speak the truth as to appellants' representative capacity.

2. Where, after judgment for defendants, in action for cancelation of certain conveyances and to quiet title, a sale was had to satisfy defendants' liens according to priority, and, subsequently, on application of one defendant, sale was vacated, an appeal by plaintiff from order vacating sale *held* not to constitute an adoption of judgment and waiver of appeal therefrom, since in order to effect waiver there must be some intent to enjoy benefit from or base some interest on judgment appealed from.

3. Order vacating sale to satisfy mortgage liens on premises according to priority, *held* appealable.

4. Where appellants, before argument, requested leave therefor, they will be permitted to file submitted amendments to their specifications of error.

5. Statement of counsel on his own and client's behalf that original deed *held* not in possession or under control of party producing certified copy was not sufficient, under C. S., sec. 7969, to authorize introduction of certified copy thereof.

6. C. S., sec. 7969, providing that certified copy of record of conveyance of real property may be read in evidence on proof that original is not in possession or under control of party producing certified copy, is mandatory, and admission of copy without such proof is erroneous.

7. Lower court's finding will not be disturbed, where evidence is in substantial conflict.

8. The fact that deed relied on by subsequent purchasers had been signed by original grantors by mark only fixed such purchasers of signers' inability to read and write.

9. Generally, grantor, alleging that his deed is invalid because of not understanding its nature or conents, must sustain the burden of proving that fact, except where confidential or fiduciary relation exists, or parties were not dealing on equal footing by reason of illiteracy, ignorance of language or lack of understanding.

10. In action by Indian wards for cancelation of deed, alleged to have been executed by them, and to quiet title, evidence *held* insufficient to support finding that plaintiffs knew they were signing deed; hence instrument recorded as such was a mere nullity and utterly void against all parties claiming thereunder.

11. Where Indian wards at time of executing alleged deed received $3,000, for which they intended and endeavored to execute a mortgage, equity will, on canceling deed, deem such mortgage executed, giving grantee an equitable lien on land therefor.

12. Where grantee mortgaged interest he might have in land as security for loan, equity on canceling deed will subrogate such mortgagee's assignee to rights of grantee to extent of $3,000 advanced to original grantors for which they intended and endeavored to execute a mortgage.

13. On canceling deed on ground that grantors at time of execution did not know they were signing a deed, title will not be quieted, unless plaintiffs save subsequent purchaser harmless from disbursements in good faith in payment of certain specified taxes on land.

14. Courts have inherent power to enforce their judgments as entered.

### ON PETITION FOR REHEARING:

15. A court order of substitution is not necessary to enable an administrator to carry on his intestate's litigation by appeal, since right of nonsubstituted or nonappearing administrator to appeal is not governed by C. S., sec. 6652, but is derived exclusively from sec. 7151, providing that any party aggrieved may appeal.

16. Where land involved in action by Indian wards to cancel conveyance and quiet title came to plaintiffs by United States patent and under law of state constituted community property, fact that husband knew at time of executing deed that it was such and not mortgage would be immaterial without proof that

wife understood nature and contents of such paper, since husband was powerless to convey property without wife's concurrence.

17. Where appeal from order vacating sale pursuant to judgment was without merit, appellants were not entitled to costs.

APPEAL from the District Court of the Tenth Judicial District, for Idaho County. Hon. Miles S. Johnson, Judge.

Action for cancelation and to quiet title. Judgment for defendants. *Reversed and remanded, with instructions.*

A. S. Hardy and F. J. Rehberg, for Appellants.

A certified copy of a record of a purported deed is not admissible in evidence without legal proof that the original is not in the possession or under the control of the party producing the certified copy, and its admission in evidence without such proof is error. (C. S., sec. 7969; *Brown v. Griffith,* 70 Cal. 14, 11 Pac. 500; *Grant v. Oliver,* 91 Cal. 158, 27 Pac. 596, 861.)

A deed secured to be signed by false representations or some trick or deceit as to the character of the instrument

---

Publisher's Note.

7. See 2 R. C. L. 204.

9. See 4 R. C. L. 495.

14. See 7 R. C. L. 1034.

See Appeal and Error, 3 C. J., sec. 368, p. 533, n. 91; sec. 467, p. 619, n. 76; sec. 491, p. 629, n. 3; sec. 536, p. 665, n. 17; sec. 993, p. 1027, n. 75; sec. 1100, p. 1088, n. 85 New; 4 C. J., sec. 2747; p. 792, n. 24 New; sec. 2855, p. 883, n. 33.

Cancelation of Instruments, 9 C. J., sec. 234, p. 1271, n. 5.

Costs, 15 C. J., sec. 597, p. 241, n. 10 New.

Deeds, 18 C. J., sec. 501, p. 422, n. 86, 91; sec. 502, p. 422, n. 95; sec. 512, p. 428, n. 66.

Evidence, 22 C. J., sec. 1342, p. 1045, n. 57; sec. 1351, p. 1051, n. 26.

Husband and Wife, 31 C. J., sec. 1210, p. 126, n. 13 New.

Indians, 18 C. J., sec. 91, p. 520, n. 72; sec. 94, p. 522, n. 6 New.

Judgments, 34 C. J., sec. 1139, p. 737, n. 83.

Quieting Title, 32 Cyc., p. 1383, n. 9.

Vendor and Purchaser, 39 Cyc., p. 1703, n. 30.

is utterly void, even as to so-called *bona fide* purchasers. (*McGinn v. Toby*, 52 Mich. 252, 4 Am. St. 848, 28 N. W. 818; *Mardin v. Dorthy*, 160 N. Y. 39, 54 N. E. 726, 46 L. R. A. 694; Devlin on Deeds, sec. 726; *Green v. Wilkie*, 98 Iowa, 74, 60 Am. St. 174, 66 N. W. 1046, 36 L. R. A. 434; *Meley v. Collins*, 41 Cal. 663, 10 Am. Rep. 279; *Babcock v. Farwell*, 245 Ill. 14, 137 Am. St. 284, 19 Ann. Cas. 75; *Indiana etc. Co. v. Fowler*, 201 Ill. 152, 94 Am. St. 158, 66 N. E. 394.)

The above is particularly true respecting illiterate persons who sign by mark. (*Selden v. Myers*, 20 How. (U. S.) 506, 15 L. ed. 976.) And an instrument so signed is as if the same were never voluntarily delivered and void. (*Bowers v. Cottrell*, 15 Ida. 221, 96 Pac. 936; *Telschow v. Quiggle*, 74 Or. 105, 145 Pac. 11.)

Entry of judgment after death of the party is error. (*Phelan v. Tyler*, 64 Cal. 80, 28 Pac. 114; *Gordon v. Hillman*, 109 Wash. 223, 186 Pac. 651; *Berding v. Varian*, 34 Ida. 587, 202 Pac. 567; C. S., sec. 6899.)

Sheriff's sale was not void by reason of erroneous statement of the amount of the judgment, and should not have been set aside, except upon complaint of the execution defendant, nor for neglect of the complaining party, the law favoring finality of sale. (C. S., secs. 6922, 6923, 6949; *Stratton v. Reisdorph*, 35 Neb. 314, 53 N. W. 136; *Amoskeag S. Bank v. Robbins*, 53 Neb. 776, 74 N. W. 261; *Stull v. Seymour*, 63 Neb. 87, 88 N. W. 174; *Everett v. Forst*, 269 Fed. 867, 15 A. L. R. 789; *Norton v. Taylor*, 35 Neb. 466, 37 Am. St. 441, 53 N. W. 481, 18 L. R. A. 88; *Colonial etc. Co.° v. Sweet*, 65 Ark. 152, 67 Am. St. 910, 45 S. W. 60.)

The property having been sold upon sheriff's sale, upon reversal of the judgment, restoration should be made to the plaintiffs. (*DiNola v. Allison*, 143 Cal. 106, 101 Am. St. 84, 76 Pac. 976, 65 L. R. A. 419; *Benney v. Clein*, 15 Wash. 581, 46 Pac. 1037; *Galpin v. Page*, 18 Wall. (U. S.) 250, 21 L. ed. 959.)

Administrator may join in appeal of coparty as a "party" without formal substitution. (*Webster v. Hastings*, 56 Neb. 245, 76 N. W. 565; *Jefferson Co. Bank v. Robbins*, 67 Wis. 68, 29 N. W. 209; *Phares v. Saunders*, 18 W. Va. 336; 2. R. C. L. 49; *Meades Estate*, 5 Cal. Unrep. 678, 49 Pac. 5.)

Appeal from order is not inconsistent with appeal from judgment. (*Fall etc. Co. v. Day*, 39 Ida. 495, 228 Pac. 313; *First Nat. Bank v. Hesdorffer*, 107 Miss. 709, 65 So. 507.)

Cox & Martin and Tannahill & Leeper, for Respondents.

The administratrix of John Oatman was an indispensable party plaintiff and no appeal could be taken until she was substituted by order of the court as a party to the action as such administratrix. (C. S., secs. 6636, 6652, 7657; *Coffin v. Edgington*, 2 Ida. 627, 23 Pac. 80; *McCornick v. Shaughnessy*, 19 Ida. 465, 114 Pac. 22, 34 L. R. A., N. S., 1188; *Holter v. Hauser*, 33 Ida. 406, 195 Pac. 628; *Pedlar v. Stroud*, 116 Cal. 461, 48 Pac. 371; *Judson v. Love*, 35 Cal. 463.)

Where a party dies after the trial of the cause is completed and the cause is submitted to the court, the decedent has had his day in court and must be presumed to have urged every consideration which his personal representatives could urge. The decree is merely the record of the court's conclusions upon issues which were fully tried while the decedent was still living. Without the power to enter decree under such circumstances the administration of justice could be gravely obstructed. Consequently, courts have inherent power to enter such judgments. (1 Freeman on Judgments, 5th ed., p. 221, sec. 121; *Mitchell v. Overman* (U. S.), 26 L. ed. 369; *In re Pillsbury's Estate*, 175 Cal. 454, 3 A. L. R. 1396, 166 Pac. 11; *More v. Miller*, 6 Cal. Unrep. 78, 53 Pac. 1077; *Fox v. Hale & Norcross Silver Min. Co.*, 108 Cal. 475, 41° Pac. 328; *John v. Superior Court*, 5 Cal. App. 262, 90 Pac. 53; *Judson v.*

*Love,* 35 Cal. 463; *Mitchell v. Schoonover,* 16 Or. 211, 8 Am. St. 282, 17 Pac. 867.)

The appeal from the order vacating the sheriff's sale asserting rights based on the validity of the judgment and the sale had under it is a waiver of the appeal from judgment. (3 C. J. 669; *Fidelity & Dep. Co. of Maryland v. Kepley,* 66 Kan. 343, 71 Pac. 818.)

In this action appellants contend that they have the right to retain all the benefits of their deal with Hampton and at the same time the right to have the arrangement canceled and annulled in so far as the interests of respondents are concerned. This contention is entirely lacking in equity. (*Haines v. Roland,* 35 Ida. 481, 207 Pac. 421; *Gamblin v. Dickson,* 18 Ida. 734, 112 Pac. 213; *Wilson v. Sunnyside Orchard Co.,* 33 Ida. 501, 196 Pac. 302; *Weber v. Pend D'Oreille Min. etc. Co.,* 35 Ida. 1, 203 Pac. 891; *Breshears v. Callender,* 23 Ida. 348, 131 Pac. 15.)

T. BAILEY LEE, J. — John and Mary Oatman, Nez Perce Indians, husband and wife, otherwise known as Zeloon Was and Pe-Yah-Na-Halt-Pa-Wit, residing upon the reservation in Idaho county, complained that on November 9, 1921, they were the patent owners of two allotments aggregating 160 acres of land in said county, of the value of $12,000; that on or about said date the defendant, Luther Hampton, agreed to make them a $3,000 five year six per cent loan, taking a mortgage on said land as security; that on November 9, 1921, said defendant brought to their residence a certain paper writing which he declared to be a mortgage on their said land, containing the loan agreement theretofore made; that being wholly uneducated, unable to read English or to speak or understand it, except very imperfectly if at all, and knowing nothing of business matters, they relied upon defendant's assurances and signed such paper by affixing their marks thereto, believing the same was a mortgage, as represented; that they continued in possession of said lands cultivating and cropping the same without any request or notice to vacate until August,

1922, when they discovered that the said defendant had, on November 12, 1921, filed for record in said county a purported deed dated as of said November 9, 1921, bearing their signatory marks, and conveying to him in fee their aforesaid land. They further plead that the defendant Hampton deeded said lands on November 26, 1921, to the defendant Schiffer, who reconveyed them to said defendant three days later; that on December 31, 1921, said defendant Hampton mortgaged the premises for $3,000 to the defandant George G. Thiessen, who later assigned to defendant Gus D. Thiessen; that thereafter the said defendant, Hampton, deeded the land to defendant Lilly Thiessen, who in turn conveyed it to defendant Schiffer; these two latter conveyances being considered mortgages to secure a $2,200 loan made Hampton by Lilly Thiessen, and later taken over by Schiffer. Upon these facts plaintiffs prayed that all of such conveyances, mortgages and assignments be canceled and that plaintiffs be adjudged the owners of such land, or failing in this, that the original deed be declared a mortgage, and that they be given such other relief as should be deemed equitable.

Defendant, Hampton, defaulted after appearance. The other defendants answered, denying plaintiffs' charges; and the defendants, Gus. D. Thiessen and Schiffer, by cross-complaint, prayed foreclosure of their mortgage liens. After the commencement of the action defendant Hampton quitclaimed the premises to the defendant Schiffer. The court found that plaintiffs, knowing it to be such, executed the deed in question, but that between them and Hampton it was understood that the deed should operate as a mortgage. It further found that the remaining defendants were *bona fide* encumbrancers, and ordered the premises sold to satisfy, according to priority, the mortgage liens of defendants Gus D. Thiessen and Schiffer. Subsequent to judgment a sale was had, and later upon application of defendant, Gus. D. Thiessen, the court ordered the sale set aside and a new one held. Plaintiff, John Oatman, died before the entry of judgment, and Mary Oatman has ap-

pealed from the judgment and order both in her own right and as administratrix of her deceased husband's estate.

[1] Respondents moved to dismiss these appeals. As grounds for dismissing the appeal from the judgment it is contended that Mary Oatman could not appeal in her own right, without joining her deceased husband's personal representative; that this latter she failed to do, since she served her notice before having been substituted as administratrix. It is not suggested that at the time she served her notice as such she was not the administratrix. In the absence of an affirmative showing, the notice will be presumed to speak the truth. It is not necessary that an acting administrator be substituted in order to carry on litigation affecting the property of the deceased. (*Webster v. Hastings,* 56 Neb. 245, 76 N. W. 565; *Jefferson County Bank v. Robbins,* 67 Wis. 68, 29 N. W. 209.)

[2] It is further alleged that the appeal from the order vacating the sale constitutes an adoption of the judgment and a waiver of the appeal therefrom. With this we cannot agree. In order to affect a waiver, there must be some intent to enjoy a benefit from, or base some interest on the judgment appealed from. Here, the appellants are fighting in sheer defense; they feel they have been sufficiently injured by the judgment and sale already suffered, and they object to having their liability increased. Such protective measures do not constitute waiver. (*Schoonover v. Osborne,* 108 Iowa, 453, 79 N. W. 263, where the judgment debtor sold his equity of redemption; *Kling v. Sajour,* 4 La. Ann. 128, where defendant purchased from plaintiff in ejectment; *First Nat. Bank v. Hesdorffer,* 107 Miss. 709, 65 So. 507, where the judgment debtor purchased after sale; *Lott v. Davis,* 262 Ill. 148, 104 N. E. 199, where the execution debtor redeemed from execution sale.)

[3, 4] As to the appeal from the order vacating the sale, respondents contend that the order is not appealable, and that appellant has failed to set out proper specifications of error. The order is appealable. (*Dahlstrom v. Portland Min. Co.,* 12 Ida. 87, 85 Pac. 916.) Before argu-

ment, appellants asked leave to file submitted amendments to their specifications of error. This practice has heretofore been allowed and will be followed here. The motions to dismiss are denied.

Among the many errors assigned upon appeal from the judgment is the charge that the court erred in admitting in evidence over objection Defendants' Exhibit 1, the same being a certified copy of the record of the alleged deed from John and Mary Oatman to defendant Hampton. This record was objected to by plaintiffs' counsel, "as incompetent, irrelevant and immaterial; and on the further ground that the original has not been accounted for, and that it has not been shown that the deed was voluntarily assented to by these parties or been shown that they knew what they were signing." Whereupon, counsel for defendants Schiffer, George and Lilly Thiessen stated: "With reference to the original deed, before the court rules, I would like to state that that was a deed to Hampton and has never been in my possession. Mr. Schiffer advises me it has never been in his possession. We have no knowledge of where it is."

[5, 6] The court then observes: "It has already been brought out by Mr. Hardy that this witness (meaning Hampton) is out of the state,—or by Mr. Rehberg. It will be admitted." The incident referred to by the court was the statement by plaintiffs' witness, Rehberg, that he had been unable to locate Hampton in the state and had last heard of him at Spokane. C. S., sec. 7969, referring to recorded conveyances of real property, provides that a certified copy of a record of such a conveyance may be read in evidence with the like effect as the original "upon proof, by affidavit or otherwise, that the original is not in the possession or under the control of the party producing the certified copy." The only proof offered was the statement of counsel upon his own and his clients' behalf. This was not the legal proof demanded by the statute. Rehberg's testimony was not directed to the issue; at most, it merely established Hampton's absence from the state.

Whether or not the defendant, Gus D. Thiessen, did not possess or control the instrument does not appear. Neither he nor his counsel made any statement regarding it. The requirement of the statute is mandatory, and the admission of the exhibit was erroneous. (*Brown v. Griffith,* 70 Cal. 14, 11 Pac. 500; *Bennett v. Green,* 74 Cal. 425, 16 Pac. 231; *Grant v. Oliver,* 91 Cal. 158, 27 Pac. 596, 861; *Green v. Green,* 103 Cal. 108, 37 Pac. 188.) Plaintiffs had not, by their finally amended complaint, admitted that they had ever executed a deed at all. On the contrary, they denied any such execution. They admitted signing some paper, but did not admit that the paper so signed was the paper recorded. The nearest approach to such an admission was their plea that "if" the paper they signed was a deed and so. recorded, it had been secured through misrepresentation of its character.

[7] Attacking the court's finding that, aside from Hampton, the remaining defendants were *bona fide* encumbrancers, appellants insist that these defendants had actual notice of plaintiffs' continued possession and operation of the premises subsequent to the alleged conveyance and prior to the acquisition of defendants' interest, and were therefore put upon inquiry. Without deciding the legal question, it is sufficient to say that on this point the evidence discloses a substantial conflict, and the court's finding will not be disturbed.

[8, 9] We come now to the core of the case. Did plaintiffs, at the time they signed the original instrument, know that it was a deed instead of a mortgage? Appellants declare that affirmative proof is wholly lacking. The fact that the alleged deed relied upon by respondents had been signed by mark only fixed them with notice of the signers' inability to read and write. The general rule undoubtedly is that a grantor who alleges that his deed is invalid because he did not understand its nature or contents must sustain the burden of proving that fact. But there are well-recognized exceptions to this rule: as where a confidential

or fiduciary relation is shown to have existed, or where by reason of illiteracy, ignorance of language, or lack of understanding, it appears the parties were not dealing on an equal footing. In such cases where it appears that one party has taken advantage of another the transaction is presumably fraudulent. This rule is well stated in Black on Rescission and Cancellation, par. 677, at top of page 1538, as follows:

"Where it is shown that one party sought to take advantage of the other, or that the latter was susceptible to the pressure of an extraneous influence on account of his advanced age, feebleness of mind or body, or illiteracy, comparatively slight circumstances will cast the burden of sustaining the contract on the party asserting its validity."

The same rule is laid down in *Ruby v. Ewing*, 49 Ind. App. 520, 97 N. E. 798. It is also recognized in 4 R. C. L. 495, toward the latter end of paragraph 8, as follows:

"Strictly speaking, the burden of proving fraud or misrepresentation is upon the party aggrieved thereby, but when the relation between the parties contracting appears to be such as renders it probable that unfair advantage has been taken by either, the transaction is presumably fraudulent."

In *Selden v. Myers*, 61 U. S. (20 How.) 506, 15 L. ed. 976, Selden sought to attack the validity of a deed formerly executed by him. He had signed by mark only, and swore that he could neither read nor write, and was misinformed as to the contents and effect of the instrument. Chief Justice Taney announced the rule:

"It is true that Selden is an unlettered man, and can neither read or write. He makes his mark to the instruments he executed; and dealing with such a person, it is *incumbent* on Myers & Co. to show, *past doubt*, that he fully understood the object and import of the writing upon which they are proceeding to charge him."

[10] As the evidence developed, it appeared that the signers were Indian wards living on the reservation, under-

standing little English, and having to talk with whites through interpreters. It was shown that these humble people had been grievously cheated by Hampton, a designing man of far superior wit and intelligence. These established facts together with the foregoing fact of their illiteracy imposed upon defendants the burden of proving that plaintiffs understood the nature, import and contents of what they were signing. Both plaintiffs testified that nothing was ever said about a deed; that they were informed and understood that the paper they affixed their marks to was a five year six per cent mortgage for $3,000. In this they were corroborated by Jim Oatman and Sol Henry, interpreters at the transaction. The only impeachment of plaintiffs' testimony was that of the witness, Diddock, who took their acknowledgments, and declared that he read part of the instrument to them and told them that it was a warranty deed conveying their lands to Hampton. This information, he testified, was conveyed to them by one of the interpreters, but he specifically stated that he did not know what the interpreter in fact announced. And there the positive testimony ends. There is absolutely no proof that the Indians were ever apprised of the true nature of the transaction. This old squaw and her mate cannot be presumed to have understood the notary; and, were it presumed that the interpreters correctly translated the alleged declarations of the notary, such presumption could not discharge the burden to overcome plaintiffs' positive testimony to the contrary. A witness for the defendants, Sol Caldwell, testified that some time after the transaction, the witness and interpreter, Jim Oatman, told him that plaintiffs knew they were signing a deed. This the witness denied. But, granting that he did make such a statement, it could have only impeached himself, and was utterly worthless to establish knowledge in the plaintiffs. This same witness, Caldwell, related a conversation with the interpreter, Sol Henry, however, by Henry denied, wherein the latter stated that Hampton had a mortgage and deed

pinned together at the time plaintiffs signed the paper alleged. This, if true, could affect only Henry and not plaintiffs. The notary, upon whose testimony defendants must rest their entire case, was impeached by the witnesses, Rehberg and O'Neill, who swore that he told them that he took little interest in the business, paid little attention to it, and stated to one of them that he did not know whether the instrument he acknowledged was a deed or a mortgage. Of inescapable significance is the fact that the defendant, Hampton, the prime mover in the deal, whose exhibited letter to Sol Henry establishes beyond controversy that plaintiffs were contracting for a loan, was conspicuous at the trial by his absence. This suit was commenced in August, 1922. He demurred on September 16th following, and on May 4, 1923, executed defendant Schiffer a quitclaim deed to the premises. Knowing the indispensability of his testimony, defendants produced neither him nor his deposition nor the alleged original deed. Such failure can be explained only by the assumption that the needful witness was dead, unable to travel, or afraid to face the music. And there being no showing that the first two conditions were extant, it will be concluded that he dared neither to come nor account for the deed. In any event, his rascality disclosed by the record poisons the entire transaction and strengthens the contention of plaintiffs. Plaintiff John Oatman's good reputation for truth and veracity was vouched for by the local Indian Agent, and that reputation was not attacked. We can find no substantial ' evidence to support the finding that these Indians knew they were signing a deed. On the contrary, the positive evidence, complemented by the circumstances arrayed, convinces us that they did not. It follows, therefore, that the instrument of record was a mere nullity, incapable of supporting any interest in favor of Hampton or those claiming under him, however innocent. It was utterly void against all parties. (*McGinn v. Tobey,* 62 Mich. 252, 4 Am. St. 849, 28 N. W. 818; *Marden v. Dorthy,* 160 N. Y. 39, 54 N. E. 726, 46 L. R. A. 694; *Meley v.*

*Colins,* 41 Cal. 663, 10 Am. Rep. 279; Devlin on Deeds, sec. 726.)

[11–13] However, the record discloses certain equities. Plaintiffs have received $3,000 from Hampton, no part of which has been paid. Respondents Schiffer and Thiessen claim the money was furnished by them. There is nothing to show that Schiffer ever furnished one cent of it. It is true that on November 26, 1921, Hampton borrowed $1,000 from Schiffer and deeded him the land as security. This money might have been turned over to plaintiffs, but three days later Schiffer for a valuable consideration reconveyed to Hampton, thus divesting himself at the time of any equitable claim against plaintiffs, had they received the money. On December 31, 1921, Hampton mortgaged the land to George G. Thiessen for $3,000. Since plaintiffs had received $100 from Hampton upon the execution of the original instrument, it is probable that $2,900 of this loan passed to them. They said they were paid the remaining $2,900 "after Christmas." But there is no positive evidence that the money so received had been furnished by Thiessen. Nevertheless, plaintiffs having enjoyed $3,000 for which they intended and endeavored to execute to Hampton a five year six per cent mortgage, equity will therefore deem such mortgage executed, giving Hampton an equitable lien on the land. And, since he purposed to mortgage such interest as he might have had to George G. Thiessen as security for the loan of December 31st, equity demands that Thiessen's assignee be subrogated to the rights of Hampton to the extent of the $3,000 five year six per cent lien against plaintiffs. The court found that Schiffer in good faith had paid certain specified taxes upon the land, and it is to be assumed that since the trial he has advanced more. Plaintiffs' title will not be quieted until plaintiffs save Schiffer harmless from these disbursements. (*Hole v. Van Duzer,* 11 Ida. 79, 81 Pac. 109.)

The cause will be reversed and remanded, with instructions to the trial court to take testimony fixing the total amount of taxes paid to date by Schiffer, make findings in accordance with the views herein expressed, and enter decree awarding defendant Gus D. Thiessen, assignee of George G. Thiessen, a $3,000 six per cent lien upon the said premises, dating from November 9, 1921, also awarding the defendant Schiffer a subsequent lien thereon for taxes advanced together with legal interest, dating from the time of payment, and directing foreclosure in the event that such liens be not discharged within 90 days of the entry of such decree.

[14] It may be said that, the judgment having been reversed, the appeal from the order vacating the sale presents a moot question only. But we are not advised as to any subsequent proceedings; and it may be that another sale has been had, followed by no redemption. The court found that the sale vacated had not followed the terms of the decree. Courts have inherent power to enforce their judgments as entered, and we do not find that right in this instance to have been abused. The order vacating the sale and directing another will be affirmed.

Each party will be required to pay his or her own costs upon the appeal from the judgment. Costs on appeal from the order will be awarded respondents.

. Wm. E. Lee, C. J., and Budge, Givens and Taylor, JJ., concur.

(May 16, 1927.)

ON PETITION FOR REHEARING

T. BAILEY LEE, J.—Respondents Schiffer, Geo. G. and Lilly Thiessen, through their counsel, have filed a petition for rehearing accompanied by a garrulous and impertinent brief distinguished chiefly for its reckless innuendo. Ordinary regard for the amenities of the profession should inspire

upon the part of losing counsel, the assumption that errors of the court, if errors there be, are due solely to defective ratiocination and not to flagrant disregard of published statutes and decisions in order to attain the result desired. While in nowise minimizing this reprehensible conduct of counsel, we are inclined to view their hysterical effervescence with less of indignation than regret, and content ourselves with striking the offensive effusion from the files.

[15] There has also been filed by evidently misled *amici curiae* a brief, the objectionable tone of which identifies it as an anticlimatic harangue of respondents' counsel, doubtless never read or digested, if read at all, by the signers. The discussion arises from a probably justified apprehension that in its former opinion the court sought to lay down as a general rule that: "It is not necessary that an acting administrator be substituted in order to carry on litigation affecting the property of the deceased." The language, while not so intended, is susceptible to the construction that in no instance is it necessary that an administrator be substituted. Such was never in the court's mind. It is elementary that an adverse party can secure no rights as against the decedent's representatives or heirs until the latter become parties to the suit. Having in mind the instant case, what the court sought to say, and now does say, is that a court order of substitution is not necessary to enable an administrator to carry on his intestate's litigation by appeal. An examination of the cases cited will clearly show what the writer had in contemplation when he employed the verbiage evidently provocative of this tempest in a teapot.

As a general proposition, it is erroneous to hold that an administrator can become a party only through a substitution by court order. Beginning with the Statute of 8 and 9 William III, governing abatements and revivals, he could be made a party either by a proceeding in *scire facias* or by voluntary appearance. This practice has been directly recognized in many of the common-law states of to-day

where the writ of *scire facias* has not been superseded by abatement and revival statutes. A typical application of the rule will be found in *Murphy v. Redmond,* 46 Mo. 319, where an appeal was dismissed for the reason that there was no plaintiff in court "either by voluntary appearance of the deceased's representatives, or upon *scire facias.*" In California, where the writ has been superseded by a statute almost identical with our own C. S., sec. 6652, authorizing the continuance of actions after the death of a party, the court recognizes the same rule. (*Bell v. San Francisco Savings Union,* 153 Cal. 64, 94 Pac. 225.)

But the right of a nonsubstituted or nonappearing administrator to appeal is not governed by C. S., sec. 6652. His right derives exclusively from C. S., sec. 7151, providing that any party aggrieved may appeal. The term "party aggrieved" has both by this court and the court of California been defined as any person injuriously affected by the judgment, irrespective of whether or not he be named as plaintiff, defendant or intervenor. He has to be named neither in the caption, pleadings nor judgment. (*State v. Eves,* 6 Ida. 144, 53 Pac. 543; *Washington County Abstract Co. v. Stewart,* 9 Ida. 376, 74 Pac. 955; *Adams v. Wood,* 8 Cal. 306; *Schino v. Cinquini,* 7 Cal. App. 244, 94 Pac. 83; *Estate of Colton,* 164 Cal. 1, 127 Pac. 643.)

The test is: Would the party have had the thing or right in controversy, if the erroneous judgment had not been given? (*Adams v. Wood, supra.*)

If the administrator had no interest in the subject matter, necessarily he could not be a "party aggrieved" by a judgment against his intestate. But he does have an interest. When appointed and qualified, all rights and interests of the decedent's litigation vest in him and he becomes the real party in interest. (*Whartenby v. Reay,* 92 Cal. 74, 28 Pac. 56.)

In the case at bar, the administratrix voluntarily appeared by filing her notice of appeal on October 13, 1925. On October 26th, following, and before the motion to dismiss

her appeal was filed, she was formally substituted by order of the district court. If any further authority for sustaining her appeal were required it is supplied by *Whartenby v. Reay, supra.* In that case plaintiff had died. His attorney of record moved to dismiss defendant's appeal. At the time the notice of the motion was given, executors of deceased's estate had been appointed and qualified, employing the attorney of record, but they had not been substituted at the time the motion was noticed for hearing. Appellant objected to the motion, contending that, the executors not having been substituted, the attorney who signed and filed the motion had no authority to act in the matter. Overruling this objection and speaking of the executors, the court said "they were the real parties in interest, and the fact that the order of this substitution *pro forma* as plaintiff had not been made in this court at that time (and which was made upon the hearing of the motion) is not sufficient to deprive the executors' attorney of the authority to make the motion."

[16] Touching the appeal on its merits, respondents insist that there is sufficient evidence in the record to support the court's finding that the plaintiff, John Oatman, knew the nature of the instrument he signed. Granting this to be true, which we do not, it can avail respondents nothing. The land involved came to plaintiffs by United States patent. Under the law of this state, it was community property; and respondents admit it to be such. There is no word in the record indicating, much less proving, that plaintiff's wife, Mary Oatman, ever understood the nature or contents of the paper she is alleged to have signed. Her illiteracy having been shown, the burden, as stated in the former opinion, was upon respondents to show she knew what she was doing; and they did not discharge it. The husband was powerless to convey the property without his wife's concurrence; and an unconscious concurrence is no concurrence.

The petition for rehearing is denied.

Appellants have likewise petitioned for a rehearing of their appeal from the order of the lower court vacating and setting aside the sale of September 15, 1925, and directing a new one. They contend that since the court has reversed the original judgment, they should recover costs on their appeal from the order, notwithstanding such appeal has been decided adversely to them. They further call attention to the fact that in pursuance of the order appealed from, a second sale has been had at which the defendant and cross-complainant, Schiffer, has become the purchaser of the property concerned in this action.

Appellants are of right entitled to a restitution of the premises at the hands of Schiffer; and the district court is directed to make an order to that effect.

[17] The appeal from the order having been without merit, appellants are not entitled to costs.

Wm. E. Lee, C. J., and Taylor, J., concur.

Budge and Givens, JJ., concur in the conclusion reached.